IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHELE BISTANY, | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | C.A. NO. 4:13-CV-02776 |
| | : | |
| RELIANCE STANDARD LIFE | : | |
| INSURANCE COMPANY | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT RELIANCE STANDARD LIFE INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT AND SUPPORTING BRIEF**

Respectfully submitted,

**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP**

BY: _____

Claire W. Parsons, Esquire
Texas Bar No. 24051159
Federal Bar No. 637822
909 Fannin Street, Suite 3300
Houston, TX 77010
Telephone: (713) 353-2000
Facsimile: (713) 785-7780
Email: Claire.Parsons@wilsonelser.com

**Attorneys for Defendant, Reliance
Standard Life Insurance Company**

2059404v.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

I.      STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ....................... 1

II.     STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT
        AND STANDARD OR REVIEW ........................................................................ 1

III.    SUMMARY OF ARGUMENT ............................................................................ 3

IV.     FACTUAL HISTORY AS EVIDENCED BY THE ADMINISTRATIVE
        RECORD ............................................................................................................ 3

        A.    Plaintiff's Claim For Benefits Was Initially Approved ............................. 4

        B.    Dr. Venkatesh Documents A Long History Of Psychiatric Problems ......... 4

        C.    Dr. Salvato Also Documents Plaintiff's Psychiatric History ..................... 6

        D.    Payman Sadeghi, M.D. Evaluates Plaintiff ............................................. 6

        E.    Arthur Hadley, M.D., P.A. Finds No Physical Basis For Disability After
              An Independent Medical Examination But Identifies Somatoform
              Disorder, A Mental/Nervous Disorder .................................................... 7

        F.    Additional Evidence Is Submitted During The Administrative Appeal ...... 8

        G.    Thomas Lafferty, M.D. And Michael Silverman, M.D. Conducted A Peer
              Review But Found No Support For Plaintiff's Claim Of Disability ......... 10

        H.    Social Security Administration Denied Plaintiff's Application For
              Disability Benefits ............................................................................... 11

        I.    Reliance Standard Upheld The Denial Of Plaintiff's Claim On Appeal ... 13

V.      ARGUMENT ................................................................................................... 13

        A.    Summary Judgment Standard ................................................................ 13

        B.    Summary Judgment In Favor Of Reliance Standard Is Warranted ........... 14

              1.    Plaintiff Suffers No Physical Disability ........................................ 14

                    a)    Plaintiff Does Not Have Lyme Disease ............................ 14

i

b)      Plaintiff Is Not Disabled Due To Fibromyalgia ................ 16

c)      Plaintiff Is Not Disabled Due To Mononucleosis ............ 19

2.      Plaintiff's Mental/Nervous Disorder Contributed To Her Impairment ................................................................................. 19

VI.      CONCLUSION ........................................................................................22

2059404v.1

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ............................................................................. 14

*Black & Decker Disability Plan v. Nord,*
538 U.S. 822, 123 S.Ct. 1965 (2003) ......................................... 16, 17

*Bush v. UNUM Life Ins. Co. of Am.,*
2010 U.S. Dist. LEXIS 78054 (S.D. Tex. Aug. 3, 2010)............ 18, 19

*Celotex Corp. v. Catrett,*
477 U.S. 317, 106 S.Ct. 2548 (1986) .................................................. 14

*Corry v. Liberty Life Assurance Co. of Boston,*
499 F.3d 389 (5th Cir. 2007)................................................................ 2

*Dennis v. Standard Ins. Co.,*
1994 U.S. App. LEXIS 37288 (9th Cir. Dec. 29, 1994) ..................... 18

*Dudley v. Sedgwick Claims Mgmt. Servs.,*
495 Fed. App'x 470 (5th Cir. 2012)..................................................... 16

*Ellis v. Liberty Life Assurance Co. of Boston,*
394 F.3d 262 (5th Cir. 2004)................................................................. 2

*Firestone Tire & Rubber Co. v. Bruch,*
489 U.S. 101, 109 S. Ct. 948 (1989) .................................................... 1

*Gent v. CUNA Mut. Ins. Soc'y,*
611 F.3d 79 (1st Cir. 2010) ................................................................. 14

*Gooden v. Provident Life & Accident Ins. Co.,*
250 F.3d 329 (5th Cir. 2001)................................................................ 18

*Hernandez v. SBC Communs., Inc.,*
265 Fed. App'x, 276 (5th Cir. 2008).................................................... 18

*Karvelis v. Reliance Standard Life Ins. Co.,*
2005 U.S. Dist. LEXIS 22948, (S.D. Tex. July 28, 2005)............. 21, 22

iii

*LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan,*
605 F.3d 789 (10th Cir. 2010) ............................................................................. 14

*Lain v. UNUM Life Ins. Co. of Am.,*
279 F.3d 337 (5th Cir. 2002) ................................................................................ 2

*Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.,*
168 F.3d 211 (5th Cir. 1999) ................................................................................ 2

*Metropolitan Life Ins. Co. v. Glenn,*
128 S.Ct. 2343 (2008) .......................................................................................... 2

*Sanders v. Unum Life Ins. Co. of Am.,*
553 F.3d 922 (5th Cir. 2008) ................................................................................ 3

*Schexnayder v. Hartford Life & Acc. Ins. Co.,*
600 F.3d 465 (5th Cir. 2010) ................................................................................ 2

*Vega v. Nat'l Life Ins. Servs.,*
188 F.3d 287 (5th Cir. 1999) ......................................................................... 1, 18

*Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan,*
493 F.3d 533 (5th Cir. 2007) ................................................................................ 2

**Statutes**

29 U.S.C. § 1001 ................................................................................................... 1

29 U.S.C. §1132(a)(1)(B) ..................................................................................... 1

**Rules**

F.R.C.P. 56(c) ..................................................................................................... 13

iv

Reliance Standard Life Insurance Company hereby moves for summary judgment, and in support, relies on the following authorities in accordance with Local Rule 7 and the Policies and Procedures of the Honorable Nancy F. Atlas.

## I.      STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed this lawsuit after Reliance Standard discontinued long term disability benefits under an employee welfare benefit plan pursuant to the terms of a disability policy that it issued to Plaintiff's former employer.  The claims in this lawsuit are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*  Plaintiff exhausted her administrative remedies before filing the lawsuit and is now seeking benefits allegedly due.  For the reasons stated below, Reliance Standard is entitled to judgment in its favor.

## II.     STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT AND STANDARD OR REVIEW

Reliance Standard has discretionary authority to interpret the terms of the Policy and to make benefit eligibility determinations.  (AR12).  Therefore, the only issue is whether the denial of benefits was arbitrary and capricious, which it was not.  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956 (1989) ("we hold that a denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority. . .").  Review of this question is limited to the record that was before Reliance Standard at the time it made its final claim decision.  *See Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 299-300 (5th Cir. 1999) (abrogated on other grounds).

Because Reliance Standard's "decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail." *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010) (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)).  This is so even when the claimant supports her claim with alternative, substantial evidence of her own.  *See Ellis*, 394 F.3d at 273. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lain v. UNUM Life Ins. Co. of Am.,* 279 F.3d 337, 342 (5th Cir. 2002).

Reliance Standard's decision can only be deemed arbitrary "if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999).  Moreover, under the abuse of discretion standard, a court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness — even if on the low end." *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389 (5th Cir. 2007).

This Court may consider the fact that Reliance Standard serves a dual role, as both insurer and decision maker.  This structural conflict of interest is, however, only one of many factors that the Court should consider.  *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 537 (5th Cir. 2007); *see also Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2351 (2008).  The structural conflict serves as a tiebreaker only when the other factors are closely balanced.  When the facts do not

2

present a close call, the structural conflict should be deemed a non-issue. *Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 925 (5th Cir. 2008) (refusing to use the structural conflict as a tiebreaker in the absence of closely balanced evidence). Here, a tiebreaker is not needed because the evidence overwhelmingly supports the claim denial.

## III.   SUMMARY OF ARGUMENT

Plaintiff claims that she is disabled due to a myriad of conditions resulting from Lyme disease. The problem is that she does not have this condition. She has also been diagnosed with fibromyalgia but substantial evidence in the record demonstrates that if she has this condition she does not suffer any disabling restrictions from it. Plaintiff does have is a significant mental/nervous disorder that prevents her from working. Pursuant to the terms of the Policy, Reliance Standard paid the full twenty-four months of benefits available for mental illness claims. As such, no additional benefits are owed.

## IV.   FACTUAL HISTORY SHOWN BY THE ADMINISTRATIVE RECORD

Michele Bistany, referred to at times within the record as Michele Lezcano was insured under Reliance Standard's disability policy number LSC107169. (AR1-30). After she became disabled from her Own Occupation and following an initial Elimination Period, benefits became payable under the Policy.[1] (AR8). However, when a mental or nervous disorder causes or contributes to the disability, as it did here, the benefit is only payable for up to twenty-four months. (AR20). Here, Plaintiff received benefits for thirty-four months while Reliance Standard investigated her continued eligibility. Based

---

[1] After 36 months, disability benefits are only payable if the physical disability prevents the insured from performing the material duties on any occupation for which her education, training or experience qualifies her. (AR8).

3

on that investigation, Reliance Standard reasonably concluded that Plaintiff was no longer entitled to benefits because (i) she was not physically incapable of performing her own occupation, and (ii) Plaintiff's mental/nervous disorder contributed to her alleged disability. (AR1733-1741). The factual history of the claim is detailed below.

### A.    Plaintiff's Claim For Benefits Was Initially Approved

Plaintiff was employed as an Account Executive/Sales, a light strength occupation. (AR437-440, 454-458). She stopped working on October 16, 2008 and submitted a claim to Reliance Standard on January 5, 2009, claiming that she was no longer able to work due to Chronic Lyme Disease and Mononucleosis. (AR433-436, 437-440, 1100-1101). Patricia Salvato, M.D., an Internal Medicine Specialist submitted a statement in support of the claim, reporting that Plaintiff's primary diagnosis was Lyme disease and identifying chronic fatigue syndrome, fibromyalgia, and chronic Epstein-Barr Syndrome, as secondary conditions contributing to the disability. (AR1100-1101).

In further support of the disability claim, Athi Venkatesh, M.D. Plaintiff's psychiatrist reported that Plaintiff suffered Major Depression. (AR543-544). According to Dr. Venkatesh, Plaintiff was *severely* functionally impaired. (AR543-544). The effects of treatment, according to Dr. Venkatesh, were minimal. (AR544). The claim was approved and benefits commenced January 14, 2009. (AR322-325).

### B.    Dr. Venkatesh Documents A Long History Of Psychiatric Problems

Dr. Venkatesh began treating Plaintiff on or about June 18, 2007, well before the disability claim, and described Plaintiff's symptoms as "chronic," noting that Plaintiff had severe anxiety and suffered from daily panic attacks which occur suddenly and for no

4

apparent reason. (AR1176). Early treatment notes revealed worsening panic attacks and no improvement was noted on several follow-up visits. (AR1177-1179). Plaintiff showed gradual improvement beginning November 2007 and her medication was helping her into January 2008. (AR1179-1180, 511). However, Plaintiff's symptoms worsened by February 2008 and her stress level was "very high." (AR528-529, 514).

By June 2008, Plaintiff's panic attacks had increased and her medications needed to be adjusted. (AR515, 1157). By November 2008, Dr. Venkatesh noted that Plaintiff's "anxiety is still out of control" and that Plaintiff was "[u]nable to sleep due to her extreme anxiety." (AR1161). In February 2009, just after the monthly benefit commenced, Dr. Venkatesh noted that Plaintiff had recently been diagnosed with Lyme Disease. (AR1162, 523). Thereafter, Dr. Venkatesh reported that Plaintiff was "more depressed, emotional, no motivation, anxious, irritable and frustrated." (AR540). Plaintiffs' anxiety and panic attacks continued. (AR525). Dr. Venkatesh reported that Plaintiff was "severely functionally impaired based on psychological test results and physician's experience" and that treatment had only minimal effects. (AR544).

In the Summer of 2009, Plaintiff told Dr. Venkatesh "I am back to normal" and reported that her "Lyme disease is cured." (AR616-617). However, by the Fall, she reported a relapse and complained that her symptoms were getting worse. (AR616-617, 1191-1192). By February 2010, Plaintiff was again reporting daily panic attacks. (AR1192-1193). Anxiety was noted on follow-up visits, triggered at times by the medical tests she was undergoing for reported Lyme disease and other alleged conditions. (AR1193-1194). Still, into April 2010, the panic attacks were reportedly occurring on a

5

daily basis. (AR1195). Visits to Dr. Venkatesh continued and by July 28, 2010, Dr. Venkatesh reported that: "'[i]t's not going well.' She reports several stressors at home and continued ill health. She is going to a neurologist about frequent headaches 'caused by constant stress and anxiety.'" (AR1196-1197).

### C.   Dr. Salvato Also Documents Plaintiff's Psychiatric History

Beginning in or about September 2008, Dr. Salvato began to document Plaintiff's anxiety and depression. (AR482-483, 1200-1203, 484-485, 1213-1215). Dr. Salvato saw Plaintiff on a nearly monthly basis until May 2010 and then continued treatment every few months until at least June 2011. (AR479-481; 486-492; 627-629; 632-635, 637-638; 644-647; 705-707; 775-778; 785-787; 791-794; 796-799; 801-804; 806-809; 883-886; 888-896; 898-901; 1022-1025; 1029-1037; 1032-1034; 1100-1101; 1229-1234; 1252-1253; 1318-1321; 1366-1368). Throughout that time, Dr. Salvato continued to document anxiety, persistent headaches and fatigue. (AR479-481, 1232-1234). Plaintiff told Dr. Salvato that she was unable to do anything except to stay in the bed. (AR801-804, 486-488, 796-799, 791-794, 785-787). Of note, it was not until January 2009, three months after Plaintiff stopped working, that the doctor referenced possible Lyme disease. (AR479-481, 1232-1234).

### D.   Payman Sadeghi, M.D. Evaluates Plaintiff

Payman Sadeghi, M.D. ordered several tests regarding Plaintiff's reported neck pain and headaches. (AR1106-1107, 759-760, 876-878). While a cervical MRI showed bulging, EEG and ENG studies were normal and a MRI of Plaintiff's brain produced normal findings. (AR759-760, 876-879).

E.     **Arthur Hadley, M.D., P.A. Finds No Physical Basis For Disability After An Independent Medical Examination But Identifies Somatoform Disorder, A Mental/Nervous Disorder**

Arthur Hadley, M.D., a Board Certified specialist in Family Practice, Preventive Medicine and Occupational Medicine performed an independent medical examination in October 2011.  (AR1488-1489, 1473-1487, 1490-1492).   After examining Plaintiff, considering her subjective complaints and reviewing her treatment records, Dr. Hadley determined that plaintiff is physically capable of light level work.  (AR1488-1489).

Dr. Hadley found no evidence of Lyme disease.  (AR1474).  Plaintiff never had the rash associated with Lyme disease, so diagnosis was dependent on serological testing. (AR1474).  Plaintiff's testing, however, did "not meet clinical or serological criteria [and] she does not have Chronic Lyme disease."  (AR1474).

Noting that fibromyalgia is typically diagnosed by a minimum score of 11/18 on trigger point testing, Dr. Hadley's examination revealed a score of 2/18, at best. (AR1474).  Still, Dr. Hadley looked beyond the trigger point testing to view "the entire patient and diagnose fibromyalgia from the set of signs and symptoms of diffuse pain, tenderness, fatigue, stiffness, tender points and normal laboratory findings."  (AR1474-1475).  By this criteria, Dr. Hadley again found that Plaintiff does not have fibromyalgia, as she was not only "energetic" but also did not have tenderness, as evidenced by her statement that it "felt good; it felt like a massage" when Dr. Hadley and his assistant were "ostensibly palpitating for lymph nodes (trigger points)."  (AR1475).

Dr. Hadley considered but ruled out the possibility of a panic disorder.  (AR1475). Although Dr. Hadley believed that Plaintiff did have panic attacks, he distinguished those

7

events from a panic disorder which is characterized as an "occurrence of repeated panic attacks that are typically accompanied by fears about future attacks or changes in behavior to avoid situations that might predispose one to those attacks." (AR1475).

Dr. Hadley did observe that two of Plaintiff's "medications can cause weakness and fatigue, and, paradoxically, high doses of narcotics cause an increase in pain." (AR1476). Another medication can cause "dizziness and somnolence." (AR1476). Further he determined that Plaintiff was experiencing "medicalization," which occurs when a patient believes and endorses a diagnosis and becomes preoccupied with the "diagnosed" disease. For example, Dr. Hadley noted that Plaintiff dismissed an opinion from a Baylor neurology team that she did not have Chronic Lyme disease and remained preoccupied with the alleged diagnosis. (AR1476).

Available objective evidence was also considered, but Dr. Hadley noted that "laboratory findings [were] essentially normal." (AR1476). Although Dr. Hadley found that Plaintiff was not physically disabled, he did conclude that she was impaired due to a psychiatric condition, namely somatoform disorder, a "type of psychiatric condition that causes physical symptoms to include pain, without physical explanation." (AR1476).

F.     **Additional Evidence Is Submitted During The Administrative Appeal**

Reliance Standard discontinued the disability benefit effective November 14, 2011, because (i) the evidence did not demonstrate a physical disability and (ii) Plaintiff suffered a mental/nervous disorder, benefits for which are limited to twenty-four months and which were paid in full. (AR423). Plaintiff appealed the decision, and Reliance Standard considered her arguments and additional documentation. (AR1503-1689).

8

2059404v.1

On appeal, Plaintiff argued that she suffers from Post or Chronic Lyme Disease. (AR1505, 1688).   She claimed that the disease caused fibromyalgia, chronic pain, swelling and aches of muscles and joints, muscle tension, extreme fatigue, nerve disorders, headaches, chronic neck and back pain, occasional paralysis of facial muscles, sporadic body temperature fluctuations, hormonal fluctuations, chronic nausea, diarrhea, sensitivity to odors, sleep disorders and cognitive difficulties.  (AR1505).

Plaintiff argued that Reliance Standard erred when it accepted Dr. Hadley's opinion over those of her treating physicians.  (AR1505).  Plaintiff attempted to support her arguments on appeal with an April 12, 2012 letter from Dr. Sadeghi which again stated that Plaintiff had been diagnosed with fibromyalgia.  (AR1676).  Plaintiff also claimed that the diagnosis of Chronic Lyme disease was consistent with the criteria established by the Center for Disease Control.  (AR1506, 1508, 1680,1580-1581, 1673).

Plaintiff also disagreed with Dr. Hadley's diagnosis of somatoform disorder, arguing that Dr. Venkatesh never diagnosed her with the disorder (AR1512, 1531, 1681). In fact, Dr. Venkatesh did so.   In the doctor's April 25, 2012 correspondence, Dr. Venkatesh wrote that Plaintiff "has been diagnosed with Major depressive disorder, recurrent, severe [and] has tried several medicines for the last five years.  [Plaintiff's] condition was so severe that she even talked about wanting to kill herself in the past.  At nonpoint[sic] in time, I diagnosed her with Somatoform Disorder.[2]   She also has been diagnosed with Lyme's disease which makes her depression even worse."  (AR1681).

---

[2] Plaintiff interprets this sentence to mean that Dr. Venkatesh never diagnosed Plaintiff with Somatoform Disorder.  Despite the error in the text, Plaintiff's interpretation is

In an effort to discredit the somatoform diagnosis, Plaintiff relied on a note from a nurse practitioner in Dr. Venkatesh's office, in which the nurse practitioner rather than the doctor ruled out Somatoform Disorder, in light of Plaintiff's Lyme disease diagnosis as well as her anxiety and depression, two other mental/nervous disorders for which benefits were limited to twenty-four months under the Policy. (AR20, 1682). In a further effort to support her appeal, Plaintiff produced additional documentation, including but not limited to a cognitive evaluation performed by Anand Balasubr Amanian, M.D., who concluded that Plaintiff suffered cognitive impairments. (AR1683-1687). Again, this is not disputed. The problem for the claim is that these limitations are related to a mental/nervous disorder and Plaintiff received the maximum amount of benefits for such a condition.

> **G.      Thomas Lafferty, M.D. And Michael Silverman, M.D. Conducted A Peer Review But Found No Support For Plaintiff's Claim Of Disability**

Reliance Standard obtained additional medical reviews, which were prepared collectively by Thomas Lafferty, M.D., a Board Certified specialist in Rheumatology and Internal Medicine and Michael Silverman, M.D., a Board Certified specialist in Internal Medicine and Infectious Disease. (AR1697-1701). They prepared a supplemental report after Reliance Standard received additional laboratory studies regarding the Lyme disease diagnosis. (AR1715, 1719-1720).

---

clearly wrong because when read in context, it is clear that the doctor meant that the diagnosis was made at one point in time.

Limiting his opinions to Plaintiff's complaints of fibromyalgia, Dr. Lafferty agreed with the diagnosis. (AR1698). However, he found no significant findings beyond the trigger point test results used to simply make a diagnosis. (AR1700). He found no documented clinical evidence to support Plaintiff's claim that Plaintiff is unable to function in any capacity. (AR1700). He recommended reasonable restrictions including, among other things, continuous sitting and only frequent standing/walking. (AR1700).

Dr. Silverman limited his review to Plaintiff's complaints of Lyme disease. (AR1699-1700). He found no reliable clinical evidence of the disease, let alone related restrictions. (AR1699-1700). He explained that Plaintiff's positive IGM Western blot test was a false positive result in light of the negative IGG Western blot test results. (AR1699-1700). Plaintiff reportedly had a low CD57 count but Dr. Silverman noted that there "is significant debate over the significance of any of this testing and this is not consistent with chronic Lyme disease." (AR1700). Dr. Silverman "could find no evidence that [Plaintiff] has active evidence of Lyme disease which is supported by the medical evidence and is associated with restrictions and limitations from 11/14/11 onward." (AR1700, 1720).

## H.    Social Security Administration Denied Plaintiff's Application for Disability Benefits

Plaintiff also applied to the Social Security Administration for disability benefits, and when the claim was denied, she appealed, claiming to have a persistent disabling condition. (AR699-703, 705-709). Reliance Standard considered the reasoning behind the Social Security's denial of Plaintiff's appeal in September 2008. (AR935-948).

11

The Social Security Administration accepted Plaintiff's diagnoses of chronic fatigue syndrome (a condition that is not recognized by the Social Security Administration as disabling), dysthymia and affective mood disorder. (AR940, 843-943). The Social Security Administration noted reports that Plaintiff had been diagnosed with mononucleosis. (AR940). Social Security also noted Plaintiff's claim that Lyme disease may have recurred. (AR940). However, relative to that disease, the Social Security Administration noted that Dr. Salvato reported the condition after Plaintiff was seen by Dr. Norris who did not make the diagnosis but rather, reported that testing revealed that Plaintiff was clear of the disease. (AR941). Dr. Norris did not rule out the possibility that Plaintiff had the disease, but noted that testing revealed negative Lyme serology. (AR941). Dr. Norris also noted only limited documentation of recurrent infectious mononucleosis. (AR941). Further relative to its review, the Social Security Administration noted that Dr. Sadeghi's testing was normal.

Based on a review of the objective evidence, subjective complaints and physician opinions, the Social Security Administration determined that Plaintiff was not disabled. (AR945). "The claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR946). Social Security also rejected Dr. Salvatore's opinion "that the claimant was unable to maintain a constant or steady performance of prolonged activity due to symptom severity." (AR946). Dr. Salvatore's opinion, according to the Social Security Administration, went against the weight of the

12

objective medical evidence.  (AR946).  Plaintiff filed another appeal, but the decision to deny Social Security disability benefits was again upheld.  (AR934, 1497-1499).

### I.   Reliance Standard Upheld the Denial of Plaintiff's Claim on Appeal

On August 28, 2012, after considering all of the evidence in the record, Reliance Standard again denied Plaintiff's claim.  (AR1733-1741).  Reliance Standard determined that (i) Plaintiff was no longer physically disabled when the benefits stopped and (ii) any limitations were caused by a mental/nervous disorder, benefits for which were limited to twenty-four months which had already been paid.  (AR1733-1741).  Because that decision is supported by substantial evidence, Reliance Standard is entitled to judgment in its favor.

## V.   ARGUMENT

### A.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment must be issued when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, when, as is the case here, there exists no genuine issue of material fact, summary judgment is appropriate after there has been "adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986).

Unlike typical summary judgment proceedings, courts reviewing dispositive motions in ERISA cases have recognized that "summary judgment is simply a vehicle for deciding the [benefits] issue and the non-moving party is not entitled to the usual inferences in its favor." *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 82-83 (1st Cir. 2010); *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010). Regardless, in this case, the facts do not lend themselves to any reasonable inference that would justify continuation of the disability benefit.

**B.      Summary Judgment In Favor Of Reliance Standard Is Warranted**

**1.      Plaintiff Suffers No Physical Disability**

Plaintiff initially claimed disability due to Lyme disease and mononucleosis. (AR433-440, 1100-1101). When the benefit was discontinued, Plaintiff claimed that she suffered from numerous conditions, all allegedly caused by Lyme disease. (AR1505). However, the record actually shows that Plaintiff does not suffer from Lyme disease. And while the diagnosis of fibromyalgia may be supported, the condition did not render Plaintiff totally disabled.

**a)      Plaintiff Does Not Have Lyme Disease**

The validity of the Lyme disease diagnosis comes down to a battle of the experts. Although some treating physicians reference Plaintiff's diagnosis or history of Lyme disease, only one, Dr. Salvato, made an actual diagnosis. During the administrative

14

process, Plaintiff complained that Reliance Standard abused its discretion when it failed to accept the opinion of Dr. Salvato and instead relied on Dr. Hadley, who determined she did not have the disease. Plaintiff's claim of error is flawed for several reasons.

Dr. Salvato's opinion is outweighed by substantial evidence within the record. Dr. Norris noted that Plaintiff was clear of the disease. (AR941). Dr. Silverman, a Board Certified specialist in Internal Medicine and Infectious Disease was unable to find any clinical evidence of the disease. (AR1697-1701). Plaintiff's positive IGM Western blot testing was a false positive result in light of negative IGG Western blot test results. (AR1699-1700). And Plaintiff's reportedly low CD57 count was not reliable because there is "significant debate over the significance of any of this testing and this is not consistent with chronic Lyme disease." (AR1700). Dr. Silverman determined that "the claimant has had continued subjective complaints without objective evidence to support evidence of acute or chronic Lyme disease." (AR1720).

The reports of Drs. Norris and Silverman bolster that of Dr. Hadley who also found no evidence of the Lyme disease. In the absence of the rash typically associated with the disease, Dr. Hadley looked to the results of serological testing in an effort to confirm the diagnosis. (AR1474). Plaintiff's test results, however, did "not meet clinical or serological criteria, she does not have Chronic Lyme disease." (AR1474).

Even if the competing opinions were only offered by Dr. Salvato and Dr. Hadley, Reliance Standard would not be obligated to accept the opinion of Dr. Salvato. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831, 123 S.Ct. 1965 (2003) (ERISA does not "suggest[] that plan administrators must accord special deference to the opinions

15

of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion"). *See also Dudley v. Sedgwick Claims Mgmt. Servs.*, 495 Fed. App'x 470, 477 (5th Cir. 2012).

In *Dudley*, the court noted that "[c]hoosing not to defer to the treating doctor is not the equivalent of ignoring his opinion." In that case, the defendant's refusal to accept the opinions of Plaintiff's treating physician "was neither arbitrary nor an abuse of discretion" and the defendant "did not abuse its discretion in deferring to its medical experts instead of to [the plaintiff's] surgeon's conclusions." *Id.* at 477. Further, "[i]n this 'battle of the experts' the administrator is vested with the discretion to choose one side over another." *Id.* at 477. In this case, Reliance Standard's rejection of Dr. Salvato's opinion in favor of Dr. Hadley's is all the more reasonable when one considers that Dr. Salvato's opinion also competes with that offered by Dr. Norris and Dr. Silverman. Moreover, even the Social Security Administration rejected Dr. Salvato's opinions through multiple levels of review. (AR699-703, 705-709, 843-946, 1497-1499). Unlike Reliance Standard, the Administration is generally required to defer to the opinion of a treating physician. *See Nord*, 538 U.S. 822, 825, 123 S.Ct. 1965, 1967. Still, the Administration determined that Dr. Salvato's opinions were not credible. This is substantial evidence favoring the claim denial.

> **b)** **Plaintiff Is Not Disabled Due To Fibromyalgia**

Plaintiff claims that she is disabled as a result of fibromyalgia. While the diagnosis may be supported by the opinions of some treating physicians, a related disability is not supported. (AR552-553, 955, 919-920, 942, 1676, 1698-1700).

16

Plaintiff treated with Dr. Sadeghi, whose opinion she relies on in support of the fibromyalgia portion of her disability claim. Dr. Sadeghi ordered numerous tests while treating Plaintiff, the results of which were normal. (AR759-760, 876-879). Dr. Sadeghi's treatment included trigger point/nerve block injections and an order for physical therapy. (AR1317, 931, 870, 865-866, 874-875, 869).

Dr. Lafferty agreed with the diagnosis, but he found no evidence that the condition was disabling. (AR1698, 1700). Dr. Lafferty found no documented clinical evidence to support Plaintiff's claim that she is unable to function in any capacity. (AR1700). She was, in his opinion, capable of continuous sitting and frequent standing and walking. (AR1700). Reliance Standard again considered the findings of the Social Security Administration regarding this claim.

The Social Security Administration noted that the majority of test results reported in Dr. Sadeghi's records were normal and that on examination, Plaintiff exhibited normal strength, grossly intact sensation, normal coordination and gait and normal deep tendon reflexes. (AR942). Similarly, Dr. Hadley, who did not agree with the fibromyalgia diagnosis because Plaintiff only scored 2/18 on his trigger point testing, observed that Plaintiff was not only "energetic" but also did not exhibit tenderness, as evidenced by Plaintiff's statement that it "felt good; it felt like a massage" when Dr. Hadley and his assistant were "ostensibly palpitating for lymph nodes (trigger points)." (AR1475).

The question is not whether Plaintiff has Fibromyalgia. The question is whether the condition prevents her from working. Plaintiff has the burden of proving that it does. *See e.g., Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 333, 335 (5th Cir.

17

2059404v.1

2001); *Vega*, 188 F.3d at 298-299 (defendant insurer has no duty to investigate).  Based on the record, Plaintiff cannot meet her burden of proving that she is physically totally disabled due to fibromyalgia.

As noted above, a diagnosis is not by itself proof of disability.  *See Hernandez v. SBC Communs., Inc.*, 265 Fed. App'x, 276, 279, n.3 (5th Cir. 2008) (citing *Dennis v. Standard Ins. Co.*, No. 93-35391, 1994 U.S. App. LEXIS 37288 (9th Cir. Dec. 29, 1994) ("mere diagnosis of chronic fatigue syndrome without showing of impairment is insufficient to find an abuse of discretion").  In *Hernandez*, the court affirmed judgment in favor of the defendant, finding that "[e]ven if [the plaintiff] was suffering from illness of some sort, [the defendant] did not abuse its discretion in denying her appeal, because there were no documented findings that her illnesses were sufficiently severe to prevent her from doing her job." *Id.* at 279.

In *Bush v. UNUM Life Ins. Co. of Am.*, No. 09-1589, 2010 U.S. Dist. LEXIS 78054 (S.D. Tex. Aug. 3, 2010), the court upheld Unum's discontinuance of benefits for a claim that was based in part on fibromyalgia.  Unum relied on the medical opinions from the claimant's own physicians, as well as the assessments of its in-house medical staff and board certified consulting physicians.  The claimant, however, failed to supplement the record "with any objectively, verifiable medical evidence in support of her disability and lack of capacity to" work. *Id.* at *39.

According to the court, Unum was justified in rejecting unreliable evidence.  The "evidence establishe[d] that Unum, as well as the medical experts upon which it relied, appreciated and accepted [the plaintiff's] diagnosis of fibromyalgia and considered the

18

subjective evidence she proffered" but it was "also evident that Unum and its medical experts focused on the absence of objectively, verifiable medical evidence in support of [the] disability." *Id*. at *41-42.  Unum "possessed medical evidence indicating that [the plaintiff] was capable of [working]." *Id*. at *42.  Such is the case here.

Plaintiff's claim of fibromyalgia-related disability is not supported by objective evidence.  Plaintiff's claim of Lyme's disease is supported by only one physician, whose opinions lack credibility.  Reliance Standard's determination, on the other hand is well reasoned and supported by substantial evidence, including documentation provided by independent consulting physicians, as well as Plaintiff's treating physicians.

### c)      Plaintiff Is Not Disabled Due To Mononucleosis

Plaintiff appears to have abandoned her mononucleosis related claim.  The record would not support the claim regardless because, as noted by the Social Security Administration, Dr. Norris found only limited documentation of recurrent infectious mononucleosis (AR941).  In any event, related disability is not documented.

### 2.      Plaintiff's Mental/Nervous Disorder Contributed To Her Impairment

There being no physical disability, only Plaintiff's mental/nervous condition appears to limit her ability to work.  Dr. Norris referenced Plaintiff's history of anxiety disorder. (AR552-553).  So too did Dr. Salvato.  (AR482-492, 627-629,  644-647, 796-799, 801-804, 806-809, 1032-1034, 1200-1203, 1213-1215, 1229-1231,  1252-1253,).  Similarly, Dr. Gilmer, believed that Plaintiff suffered, among other things, non-epileptic spells of unclear etiology probably related to stress.   (AR919-920).  And Dr. Hadley, as

19

a result of his record review and examination concluded that Plaintiff was (i) suffering effects of overmedication; (ii) experiencing "medicalization," which occurs when a patient believes and endorses a diagnosis (such as the Lyme's disease diagnosis) that she was given in error and becomes preoccupied with the "diagnosed" disease; and (iii) impaired as a result of somatoform disorder, a "type of psychiatric condition that causes physical symptoms to include pain, without physical explanation." (AR1476).

Plaintiff argues that Dr. Venkatesh never diagnosed somatoform disorder, and that Reliance Standard therefore should not have accepted Dr. Hadley's opinion. (AR1212, 1531, 1681). Dr. Venkatesh had, at one time diagnosed Plaintiff with the condition. (AR1681). However, *a nurse practitioner* ruled out the diagnosis in light of Plaintiff's Lyme disease diagnosis and demonstrated symptoms of anxiety and depression. (AR1682). As noted above, Lyme's disease is not a valid diagnosis. Further, benefits for a disability caused or contributed to by anxiety or depression are also limited to twenty-four months. (AR20). Therefore, the nurse practitioner's opinion that anxiety and depression contributed to the claim fully supports the denial of benefits.

As part of the review, Reliance Standard considered the entire record, including all of Dr. Venkatesh's records. In an April 25, 2012 letter, Dr. Venkatesh wrote that Plaintiff "has been diagnosed with Major depressive disorder, recurrent, severe [and] has tried several medicines for the last five years. [Plaintiff's] condition was so severe that she even talked about wanting to kill herself in the past." (AR1681). The treatment records document extensive psychiatric treatment.

20

2059404v.1

In 2007, approximately two years before Plaintiff stopped working, Dr. Venkatesh described Plaintiff's symptoms as "chronic," noting that Plaintiff had severe anxiety and suffered with daily panic attacks which occur suddenly and for no apparent reason. (AR1176). Plaintiff's progress fluctuated with treatment through August 2010. (AR511, 514-515, 517-520, 523, 525, 528-529, 540, 543-544, 613-617, 694, 1157, 1161-1162, 1177-1180, 1191-1198). Weeks after Plaintiff stopped working and months before she was diagnosed with Lyme disease, Dr. Venkatesh reported that Plaintiff's "anxiety is still out of control" and that she was "[u]nable to sleep due to her extreme anxiety." (AR1161-1162, 523).

In *Karvelis v. Reliance Standard Life Ins. Co.*, No 03-3848, 2005 U.S. Dist. LEXIS 22948, (S.D. Tex. July 28, 2005) the record contained competing physician opinions on the issue of whether the claimant's chronic fatigue syndrome was caused or contributed to by a mental or nervous disorder. The court upheld the denial of benefits after twenty-four months because, as is the case here, "the record presents significant evidence of the presence of a mental or nervous disorder that contributed to [the] disability." *Id*. at *71.

Dr. Salvato provided the expert opinion that was ultimately rejected in *Karvelis* and it should be rejected here too. "Although Dr. Salvato is board-certified in internal medicine and has significant clinical experience in [chronic fatigue syndrome], she nevertheless ruled out the possibility that [the claimant's] disability symptoms were brought about by or contributed to by a psychiatric condition with no apparent basis to support excluding a condition, such as a psychiatric examination." *Id*. at *76-77. In this

21

case, the evidence of mental illness as the cause of the symptoms is also overwhelming. Because Plaintiff failed to prove that she was physically disabled at the time benefits stopped and she received the maximum benefits for a mental illness, Reliance Standard is entitled to judgment in its favor.

## VI.    CONCLUSION

The record contains substantial evidence showing not only that Plaintiff was not physically disabled when the benefit ceased but that a mental/nervous disorder contributed to any impairment.   Benefits are therefore limited to twenty-four months which have been paid in full.   Therefore, summary judgment should be entered in favor of Defendant.

Respectfully submitted,

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP

BY: _____

Claire W. Parsons
State Bar No. 24051159
Federal Bar No. 637822
909 Fannin Street, Suite 3300
Houston, TX 77010
(713) 353-2039 / (713) 785-7780(f)
Email: Claire.Parsons@wilsonelser.com

***Attorneys for Defendant, Reliance Standard Life Insurance Company***

22

2059404v.1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Reliance Standard Life Insurance Company hereby certifies that a true and correct copy of the foregoing Motion for Summary Judgment was served on the following counsel of record electronically *via* the Court's ECF system when uploaded for filing, or alternatively *via* U.S. Mail, postage prepaid, on the 30th day of June, 2014.

Marc Whitehead
Whitehead & Associates, LTD, LLP
5300 Memorial Drive, Suite 725
Houston, TX 77007
***Attorneys for Plaintiff Michele Bistany***

BY: _____
Claire W. Parsons

2059404v.1