**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MICHELE BISTANY | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| | § | CIVIL ACTION NO. 4:13-CV-2776 |
| RELIANCE STANDARD LIFE | § | |
| INSURANCE COMPANY | § | |
| | § | |
| Reliance. | § | |

**PLAINTIFF'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

MARC WHITEHEAD & ASSOCIATES, L.L.P.

Marc S. Whitehead
TX Bar # 00785238
Federal ID # 15465
5300 Memorial Drive, Suite 725
Houston, Texas 77007
Telephone: (713) 228-8888
Facsimile: (713) 225-0940
marc@marcwhitehead.com

**ATTORNEY IN CHARGE FOR PLAINTIFF,**
**MICHELE BISTANY**

i

## Table of Contents

I.  NATURE AND STAGE OF THE PROCEEDING…………………………………………1

II.  STATEMENT OF THE ISSUES…………………………………………………………2

    A.  Whether Reliance's decision to deny benefits to Plaintiff was arbitrary and capricious……………………………………………………………………………….2

    B.  Whether Reliance's decision that Plaintiff is not disabled is supported by substantial evidence………………………………………………………………….2

        1.  Standard for Summary Judgment…………………………………………2

        2.  The ERISA Standard of Review ……………………..…………………2

III.  SUMMARY OF THE ARGUMENT……………………………………………………4

IV.  STATEMENT OF FACTS ……………………………………………………………4

    A.  Ms. Bistany became disabled in 2008 and remains disabled due to several ongoing, chronic illnesses……………………………………………………………4

    B.  Reliance initially approved Ms. Bistany's disability claim but later terminated her benefits…………………………………………………………………………....5

    C.  Dr. Hadley's diagnosis is not based on the medical record………………………6

        1.  Chronic Lyme Disease………………………………………………………6

            a. Western Blot test results………………………………………………..7

            b. CD57 test results…………………………………………………….7

        2.  Fibromyalgia………………………………………………………...9

        3.  Somatoform Disorder………………………………………………10

    D.  Ms. Bistany's cognitive disabilities and physical impairments preclude her from performing any occupation………………………………………………………11

    E.  Ms. Bistany's condition is cyclical despite constant treatment…………………13

    F.  Reliance denied Ms. Bistany's appeal of the termination of her disability benefits……………………………………………………………………..16

V.  ARGUMENT AND AUTHORITIES …………………………………………………..17

A.    Reliance's decision to deny benefits to Ms. Bistany was arbitrary and capricious………………………………………………………………..17

B.    Reliance's decision that Ms. Bistany is not disabled is not supported by substantial evidence…………………………………………………………..23

VI.    ATTORNEY'S FEES………………………………………………………...24

VII.   CONCLUSION ……………………………………………………………24

## <u>Table of Citations</u>

**Cases**

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003)......................................17,19,21,23

*Cooper v. Hewlett-Packard*, 592 F.3d 645 (5th Cir. 2009) .........................................................2,3

*Haverda v. Hays County,* 723 F.3d 586 (5th Cir. 2013)................................................................2

*McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161 (6th Cir. 2003)..........................19,20

*Schexnayder v. Hartford Life and Accident Ins. Co.*, 600 F.3d 465 (5th Cir. 2010) .....................3

*Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222 (5th Cir. 2004)...........................................3

*Statutes & Rules*

Fed. R. Civ. P. 54(d) .....................................................................................................................24

Fed. R. Civ. P. 54(d)(2)(B) ............................................................................................................24

Fed. R. Civ. P. 56(a) .......................................................................................................................2

29 U.S.C. § 1132..............................................................................................................................1

29 U.S.C. § 1132(g)(1) ..................................................................................................................24

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHELE BISTANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No. 4:13-cv-2776 |
| RELIANCE STANDARD LIFE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant | § | |

## PLAINTIFF'S MEMORANDUM OF LAW IN
## SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff Michele Bistany ("Ms. Bistany") files her Memorandum of Law in Support of Motion for Summary Judgment and in support thereof shows as follows:

### I.    NATURE AND STAGE OF THE PROCEEDING

In 2013, Ms. Bistany filed her Complaint against Defendant[1] alleging a cause of action for wrongful denial of disability benefits under ERISA, 29 U.S.C. § 1132. Throughout this motion, Ms. Bistany will cite to the stamped numbering in the administrative record as produced by Reliance in its initial disclosures.

Despite Defendant's receipt of voluminous medical records from multiple providers establishing Ms. Bistany's disability, Reliance disregarded the opinions of Ms. Bistany's treating physicians and the extensive laboratory reports submitted. Instead, Reliance relied on the conclusory opinion of a retained physician who examined Ms. Bistany on a single occasion and paper reviews from two other retained physicians.

---

[1] "Defendant" is Reliance Standard Life Insurance Company or "Reliance."

1

Reliance's decision to terminate Ms. Bistany's long term disability benefits was not based on substantial evidence; rather, its decision was arbitrary and capricious.

## II.   STATEMENT OF THE ISSUES

**A.   Whether Reliance's decision to deny benefits to Ms. Bistany was arbitrary and capricious.**

**B.   Whether Reliance's decision that Ms. Bistany is not disabled is supported by substantial evidence**

### 1.   Standard for Summary Judgment

The Court reviews a grant of summary judgment de novo. *Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013) (citations omitted). "Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (citing FED. R. CIV. P. 56(a)). "A court considering a motion for summary judgment must consider all facts and evidence in the light most favorable to the nonmoving party." *Haverda*, 723 F.3d at 591 (citing *LeMaire*, 480 F.3d at 387). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Haverda*, 723 F.3d at 591 (citations omitted).

### 2.   The ERISA Standard of Review

"'Standard summary judgment rules control in ERISA cases.'" *Cooper v. Hewlett-Packard*, 592 F.3d 645, 651 (5th Cir. 2009) (quoting *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 225 (5th Cir. 2004)). When the district court grants a summary judgment, it is reviewed de novo. *Cooper*, 592 F.3d at 651 (citing *Strong v.*

*Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 805 (5th Cir. 2007)).  "When an ERISA benefits plan provides the plan administrator with discretionary authority to construe the terms of the plan, the plan administrator's denial of benefits is reviewed for abuse of discretion." *Cooper*, 592 F.3d at 651-52 (quoting *Gosselink v. American Tel. & Tel. Inc.*, 272 F.3d 722, 726 (5th Cir. 2001)). In an ERISA case, abuse of discretion review is the same as arbitrary and capricious review.  *Cooper*, 592 F.3d at 652 (citing *Meditrust Fin. Servs. Corp. v. Sterling CheMs. Inc.*, 168 F.3d 211, 214 (5th Cir. 1999)).  When a court reviews the administrator's decision to determine if it was arbitrary and capricious, it affirms the administrator's decision if it was supported by substantial evidence.  *Cooper*, 592 F.3d at 652 (citing *Meditrust*, 168 F.3d at 215); *see also Schexnayder*, 600 F.3d at 468 (citing *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 246 (5th Cir. 2009)).  "'Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Cooper*, 592 F.3d at 652 (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2005)).

A decision is arbitrary if there is no rational connection between the known facts and the decision or between the found facts and the evidence.  *Cooper*, 592 F.3d at 652 (citing *Meditrust*, 168 F.3d at 215).  Even if the plan does not expressly grant discretionary authority, the standard of review for factual determinations under ERISA plans is abuse of discretion.  *Vercher*, 379 F.3d at 226 (citations omitted).

### III.    SUMMARY OF ARGUMENT

Ms. Bistany suffers from Lyme disease, fibromyalgia, severe neurocognitive deficits and numerous other medical impairments.  Even though her physicians state she cannot work and their opinions are well supported by the medical record, Reliance terminated her disability benefits.  Reliance's decision was arbitrary and capricious for many reasons, including the following:  (i) Ms. Bistany's treating physicians have expertise that Reliance's consultants lack; (ii) Reliance's consultants disregarded Ms. Bistany's Western Blot results that show she is positive for Lyme disease; (iii) Reliance's primary consultant failed to address Ms. Bistany's numerous CD57 low count results and its significance; (iv) Reliance's primary consultant mischaracterized Ms. Bistany's Western Blot results; (v) Reliance's primary consultant's opinions are based on incomplete records and a single isolated examination of Ms. Bistany; (vi) Reliance's other non-examining consultants' opinions are based on incomplete and erroneous records and only review of Reliance's file; (vii) Reliance's consultants failed to address the diagnoses given by Ms. Bistany's treating physicians and the basis thereof; and (viii) Ms. Bistany has longstanding relationships with her treating physicians.  Reliance's decision was not based on substantial evidence as, under the foregoing circumstances, a reasonable mind would not accept the opinions of Reliance's consultants as adequate to support the conclusion that Ms. Bistany is not disabled under the terms of the plan.

### IV.    STATEMENT OF FACTS

**A.    Ms. Bistany became disabled under the terms of the plan in 2008 and remains disabled due to several ongoing, chronic illnesses.**

From June 2001 to October 2008, Ms. Bistany was a business development manager for Resource Staffing, Inc.  (AR 1102).  In late 2008, Ms. Bistany became ill and has never been able to return to work.  (AR 1100-1102, 1581, 1673).  Ms. Bistany suffers from several ongoing, chronic illnesses. Ms. Bistany has advanced borreliosis, commonly referred to as post-Lyme disease syndrome or Chronic Lyme Disease, which despite the assistance of numerous physicians and undergoing frequent routine diagnostics and analyses, has remained incurable.  (AR 1022, 1100, 1460, 1580-81, 1673).  Ms. Bistany also suffers from numerous other illnesses and symptoms such as fibromyalgia, persistent fatigue, chronic headaches, chronic back pain, chronic nausea, diarrhea, sleep disorders, cognitive difficulties such as concentration and memory disturbance, abdominal pain, sore throat, anxiety and viral encephalopathy.  (AR 629, 634, 643, 646, 777, 885, 1022, 1025, 1100, 1452).

**B.      Reliance initially approved Ms. Bistany's disability claim but later terminated her benefits.**

In September 2008, Ms. Bistany filed a disability claim under her long term disability insurance policy.  (AR 0309, 1102).  Reliance paid benefits for the period of January 14, 2009 through November 14, 2011 as Reliance initially found Ms. Bistany was unable to perform her job duties.  (AR 423).  On November 30, 2011, Reliance terminated Ms. Bistany's benefits by final denial letter, admitting its "determination was largely based on the recent Independent Medical Examination[2] performed on October 21, 2011 by Dr. Arthur Hadley." Dr. Hadley dismissed Ms. Bistany's physical impairments

---

[2] Hereafter, "IME."

and concluded her impairments were solely due to psychiatric factors.  (AR 422).

**C.     Dr. Hadley's diagnosis is not based on the medical record.**

In the denial letter, Reliance gave significant deference to Dr. Hadley's IME report without any explanation of the reasons why the records of Ms. Bistany's treating physicians were not given any consideration.  (AR 422-424).

**1.     Chronic Lyme Disease**

Disregarding the ample documentation substantiating Ms. Bistany's diagnosis of Lyme Disease,[3] Dr. Hadley focused only on antibody production to Borrelia burgodorferi, the bacterium causing Lyme disease.  (AR 1560).  Numerous records by Dr. Salvato, Ms. Bistany's treating physician for Lyme disease, reflect a conclusive, *lab result-based* diagnosis of Lyme disease.  (AR 1580-1581, 1673).[4]  These lab results include two separate types of tests, the Western Blot serum test which determines the presence of certain numbered bands and a test for a CD57 count.  (AR 1580-1581, 1673).  Ms. Bistany's Western Blot results are positive for Lyme disease which is shown by the presence of 2 out of 3 of certain numbered IgM bands.  (AR 1610-1614, 1652, 1658, 1667).  Ms. Bistany's lab results also are positive for Lyme disease with a low CD57 count for a period of time ranging between August 2010 and February 2012.  (AR 1655, 1657, 1659, 1662, 1663).

---

[3] *See, e.g.*, AR 1022, 1100, 1460, 1580-81, 1673.
[4] As noted in Dr. Salvato's letter dated February 21, 2012, "a person is positive for Lyme if they have 2 of the 3 bands of 23, 29, or 41…."  (AR 1580).  Dr. Salvato also explained that a low CD57 number of 25 is consistent with active Lyme disease.  (AR 1673).

**a.    Western Blot test results**

Ms. Bistany has several serologic tests that show she is positive for Lyme disease. (AR 1610-1614, 1652, 1658, 1667, 1580-1581).  In his IME report, Dr. Hadley confirmed that two of the IgM bands, including 23, 39 and 41, must be positive.  (AR 1560). However, Dr. Hadley also incorrectly stated "[i]n … Bistany's case, only the IgM 23 was positive."  (AR 1560).  Contrary to this conclusion, several of Ms. Bistany's lab results show she was also positive for IgM 41.  (AR 1611, 1613, 1652, 1658, 1667).

Dr. Hadley's report addendum lists the records he evaluated[5] but the list is noticeably incomplete.  (AR 1576-1579).  Although Dr. Hadley's examination was performed on October 21, 2011, he did not evaluate the 12/23/2008 Quality Infusion Care Laboratory blood analysis nor the 10/11/10 and 07/26/11 LabCorp CDC diagnostic tests, all of which conclusively show the presence of the IgM P41 and P23 bands which, by Dr. Hadley's own admission,[6] constitute a positive result for the borreliosis bacteria.  (AR 1576-1579, 1652, 1658, 1667).

**b.    CD57 test results**

Ms. Bistany's CD57 counts have been consistently low.  (AR 1655, 1657, 1659, 1662, 1663).  On June 10, 2011, Dr. Salvato observed that Ms. Bistany's "CD57 number is low at 25 (with the normal being 60-360) consistent with active Lyme disease.  The CD57 is used to help determine how active the infection is, how well the treatment is working and whether, after treatment ends, a relapse is likely to occur."  (AR 1673).  On

---

[5] The entirety of Dr. Hadley's addendum is a list of records he evaluated.  (AR 1576-1579).
[6] In his report, Dr. Hadley stated "[i]f the IgM test is to be regarded as positive, two of the following IgM bands must be positive:  23, 39, and 41."  (AR 1560).

February 21, 2012, Dr. Salvato noted Ms. Bistany "has had consistently low CD57 counts as seen on 06/02/11 with a CD4 count of 25."  (AR 1580).

Joseph J. Burrascano Jr., M.D., a leading authority in treating tick-borne illnesses, also recognizes the significance of the CD57 count:  "Chronic LB[7] infections are known to suppress the immune system and can decrease the quantity of the CD-57 subset of the natural killer cells.  … in LB we can use the degree of decrease of the CD-57 count to indicate how active the Lyme infection is…"  (AR 1622).  Dr. Burrascano observes further:

> "When this test is run …, we want our Lyme patients to measure above 60; a normal count is above 200.  … the number … remains low until the LB infection is controlled and then it will jump.  If the CD-57 count is not in the normal range when a course of antibiotics is ended, then a relapse will almost certainly occur."

(AR 1622).

Even though Dr. Hadley's addendum lists lab work he evaluated, and such lab work includes numerous lab work results that reflect a low CD57 count and Dr. Hadley expressly mentions a "CD 57" test, in his IME report, Dr. Hadley altogether failed to address Ms. Bistany's CD57 counts and the medical significance of a low CD57 count.  (AR 1576, 1559-1575).[8]  In other words, Dr. Hadley's medical diagnosis completely overlooked and ignored Ms. Bistany's consistently low CD57 counts.  (AR 1559-1575).

---

[7] Lyme Borresliosis
[8] Dr. Hadley's addendum lists the lab work reflected in AR 1655, 1659, 1662, 1663.

### 2.    Fibromyalgia

Contrary to numerous medical records, Dr. Hadley opined that Ms. Bistany does not have fibromyalgia.  (AR 1560).  While expressly admitting he used distracted testing instead of "the formal method of testing the 8 anterior and 10 posterior trigger point sites in order," Dr. Hadley also admitted that "[t]o make the diagnosis of fibromyalgia, in the strictest sense, eleven out of eighteen trigger points must be positive."  (AR 1560).

Dr. Payman Sadeghi, one of Ms. Bistany's treating physicians for fibromyalgia, has conducted extensive medical examinations of Ms. Bistany.  (AR 753-772, 863-872, 954-957, 1104-1112, 1315-1316, 1320-1335, 1415-1416, 1674-1676).  In his records, Dr. Sadeghi noted "[MS. BISTANY] HAS ALL THE 18 TENDER POINTS OF FIBROMYALGIA" and he diagnosed Ms. Bistany with fibromyalgia (AR 955, 1675-1676).  Dr. Salvato corroborated Dr. Sadeghi's diagnosis, noting Ms. Bistany "meets the ACR (American College of Rheumatology) criteria for Fibromyalgia through tender point criteria."  (AR 1673).   Even though several of the records of Dr. Sadeghi's examinations are listed in Dr. Hadley's addendum, including Dr. Sadeghi's record stating Ms. Bistany has all 18 tender points, Dr. Hadley ignored Dr. Sadeghi's diagnosis and also failed to explain the reason for his disregard of such diagnosis.  (AR 1577, 1559-1575).  As for the omission of Dr. Sadeghi's other records in Dr. Hadley's addendum, it shows Dr. Hadley's conclusions are based only on some of Ms. Bistany's medical records and therefore such conclusions cannot be presumed accurate or even conclusive (and they must be questioned).  While completely overlooking Dr. Sadeghi's records and diagnosis and failing to explain his reasoning, Dr. Hadley relied solely on his single medical exam

in evaluating Ms. Bistany for a diagnosis of fibromyalgia.  (AR 1559-1575).  Dr. Hadley also ignored the records and diagnosis of William S. Gilmer, M.D. even though Dr. Gilmer's records are also listed in Dr. Hadley's addendum.  (AR 1577, 1559-1575, 1677).

Moreover, contradicting the findings by Dr. Sadeghi and Dr. Gilmer that Ms. Bistany presented with the tender points associated with fibromyalgia, insufficient energy, tenderness afflicting multiple areas of her body and pain and stiffness through her body,[9] Dr. Hadley dismisses Ms. Bistany's fibromyalgia based upon her appearance, stating "Ms. Bistany had neither trigger points, nor did she meet the criteria of the chronically ill appearing woman, without energy, having tenderness in multiple areas, and complaining of diffuse pain and stiffness."  (AR 1564, AR 1676-1678).

### 3.    Somatoform Disorder

In his report, Dr. Hadley, a physician who is board certified in family practice, preventive medicine and occupational medicine, but not psychiatry, included a lengthy analysis of psychological factors and concluded Ms. Bistany has somatoform disorder. (AR 1559-1575).   Reliance's deference to Dr. Hadley's analysis over that of Ms. Bistany's long term physicians (including a psychiatrist) is never explained.  (AR 421-424, 1733-1741).

Dr. Hadley's report primarily focuses on categorizing Ms. Bistany's condition as a psychosomatic disorder.  (AR 1559-1575).  Dr. Hadley rationalized his diagnosis in part by asserting Ms. Bistany's condition is a result of a combination of prescription

---

[9] *See* AR 955, 1675-1677.

medication being used to treat her condition.[10] (AR 1559-1575). However, Dr. Hadley's analysis neither explains nor properly correlates the amount and frequency in which Ms. Bistany's medications would cause or reflect Ms. Bistany's actual symptoms. (AR 1559-1575). Dr. Hadley also specifically noted that Neurotonin has contributed to Ms. Bistany's somatoform disorder but he omitted it from the list of medications in his report enclosure. (AR 1562, 1573). Contrary to Dr. Hadley's diagnosis, Dr. Salvato has expressly confirmed that Ms. Bistany has "no contraindications" in regards to her medications. (AR 1680).

Although their records are listed in Dr. Hadley's addendum, Dr. Hadley altogether failed to address or even remotely acknowledge the medical analyses of five other physicians who previously performed medical examinations on Ms. Bistany[11] and made independent medical determinations that Ms. Bistany is afflicted with chronic Lyme disease and fibromyalgia. (AR 1559-1579).

### D. Ms. Bistany's cognitive disabilities and physical impairments preclude her from performing any occupation.

Ms. Bistany's medical records, along with the other evidence of her disability, show that Ms. Bistany has restrictions and limitations severe enough to prevent her from performing any occupation. (AR 629, 634, 643, 646, 777, 885, 1022, 1025, 1100, 1452, 1580-1581, 1673-1678). Ms. Bistany's prior position as a business development manager required her to be interactive with her clients on a full time basis, to establish and maintain profitable relationships with long term clients, to actively seek prospects for

---

[10] *See* AR 1562.
[11] Such physicians include Dr. Salvato, Dr. Sadeghi, Dr. Venkatesh, Dr. Gilmer and Dr. Norris. (AR 1576-1578).

new clients in order to maximize sale potential and to manage and supervise the responsibilities of several groups. (AR 433-440).

On December 19, 2011, Dr. Anand Balasubramanian conducted a cognitive assessment and evaluation of Ms. Bistany. (AR 1683-1687). Dr. Balasubramanian's evaluation confirms Ms. Bistany has significant cognitive impairments that affect her memory, concentration, reasoning, physical reactions, and responsiveness. (AR 1683-1687). A review of Ms. Bistany's cognitive impairments reveals obvious effects on her ability to perform her job tasks. (AR 1683-1687, 433-440).

According to the cognitive test performed by Dr. Balasubramanian, Ms. Bistany's subjective scores do not fall within a reasonable range of a standard score and Ms. Bistany has a neurocognitive index of *very low*. (AR 1683-1687). In fact, Ms. Bistany's substantially below average scores, in which she ranks among the 1 percentile, reflect drastic impairment and cognitive deficiencies in Composite Memory, Verbal Memory Test, Visual Memory Test, Psychomotor Speed/Finger Tapping Test, Reaction Time/Stroop Test, Complex Attention/Continuous Performance Test, Cognitive Flexibility/Symbol Digit Coding and Executive Functioning/Shifting Attention Test. (AR 1683-1687).[12]

Furthermore, Ms. Bistany also struggles with chronic fatigue resulting from her Lyme infection and fibromyalgia. (AR 643, 646, 777, 885, 1100, 1452, 1581). Ms. Bistany experiences extreme fatigue after short periods of physical exertion which requires extensive periods of rest after performing simple tasks. (AR 1100, 1581). Dr.

---

[12] Descriptions of each of these tests and the tasks involved are found in AR 1683-1685.

12

Venkatesh has noted that Ms. Bistany is "unable to perform activities of daily living" and "her condition is so severe that she could not fulfill her role as a mom and a wife on a daily basis."  (AR 1681).  Dr. Salvato has stated "Ms. Bistany is totally disabled from any gainful employment and must follow a 2:1 ratio of rest vs. activity, i.e., for every 1 hour of activity, she requires 2 hours of rest."  (AR 1673).

### E.    Ms. Bistany's condition is cyclical despite constant treatment.

Chronic Lyme disease has been recognized for its complexity in diagnosis as well difficulty in providing proper treatment to those afflicted with this illness.  (AR 1615-1651).  Dr. Burrascano states that "[u]nder treated infections will inevitably resurface, usually as chronic Lyme, with its tremendous problems of morbidity and difficulty with diagnosis and treatment."  (AR 1617).  Furthermore, he identifies that those with chronic Lyme tend to follow three specific criteria:

1. Illness present for at least one year
2. Have persistent major neurologic involvement or active arthritic manifestations
3. Still have active infection with B. burfdorferi, regardless of prior antibiotic therapy.

Ms. Bistany's illness correlates with every single criterion, signifying that she possesses the classic symptoms of chronic Lyme disease.  First, Ms. Bistany's illness has persisted and fluctuated for over four years, with consistent indications that she still possesses the B. burfdorferi infection.  (AR 1580-1581, 1610-1614, 1652-1678, 1680-1682).  Second, Ms. Bistany has both persistent major neurological issues as well as active arthritic complications, poignantly accentuated by her affliction of fibromyalgia.

(AR 1674-1676)  Third, her illness remains active, despite her prior and present antibiotic treatment therapy.  (AR 1673).

In addition to the physicians with whom she regularly visits, Ms. Bistany sought the medical opinion of Charles L. Crist, M.D.  Dr. Crist, a physician who has treated over 7,000 borreliosis patients, noted "Michele's long-term illness may go into remission, to where she can go off her antibiotic therapies and do quite well for a period of time, then relapse and have to go back on antibiotics.  Some patients take antibiotics for several years before obtaining a remission."  (AR 1688).  Dr. Crist determined Ms. Bistany "has classic symptoms of tick-borne illness."  (AR 1688).

Consistent with Dr. Crist's conclusions, Dr. Salvato observed that "[t]hroughout [Ms. Bistany's] course with me, she has had her Lyme bands go down to 1 only to reappear.  This is common in the course of Lyme disease, as with treatment the Lyme bug *can escape detection from the immune system and antibodies can save and reappear*." (AR 1581) (emphasis added).  Despite treating Ms. Bistany's infection immediately after it has been positively identified in her blood analysis, Ms. Bistany's B. burfdorferi infection reemerges months and years after Ms. Bistany has been treated with numerous antibiotics.  (AR 1580-1581, 1688).

Furthermore, according to Dr. Burrascano, cited earlier as a leading authority in treating tick-borne illnesses,

> "… serologic tests can become *less* sensitive as the infections progress, obviously because of the decreased immune response upon which these tests are based.  In addition,

> immune complexes form, trapping Bb[13] antibodies.   ….
> Similarly, *the antibody titer may rise, and the number of*
> *bands on the western blot may increase as treatment*
> *progresses and the patient recovers.*   Only years after a
> successfully treated infection will the serologic response
> begin to diminish."

(AR 1617-1618) (emphasis added).[14]

Consistent with Dr. Burrascano's observations on serologic testing, Ms. Bistany's

lab results dated 3/23/10 and 5/25/10 show dramatic fluctuations in antibody production.

(AR 1653-1654).   The constant fluctuations in which Ms. Bistany's IgM bands appear

negative and later reappear as positive are symptomatic for Chronic Lyme Disease and

affirmative indicators of her illness.  (AR 1581, 1618, 1688, 1610-1614, 1652-1672).

Dr. Burrascano also explained:

> "Many collateral conditions result in those who have been
> chronically ill so it is not surprising that damage to virtually
> all bodily systems can result.  Therefore to fully recover not
> only do all of the active infections have to be treated, but all
> of these other issues must be addressed in a thorough and
> systematic manner.  ***No single treatment or medication will***
> ***result in full recovery of the more ill patient.   Only by***
> ***addressing all of these issues and engineering treatments***
> ***and solutions for all of them will we be able to restore full***
> ***health to our patients***."

(AR 1618).

Despite having the assistance of Dr. Salvato, Dr. Sadeghi, Dr. Venkatesh, and Dr.

Crist as her treating physicians, Ms. Bistany has to continually seek treatment for Lyme

---

[13] *Borrelia burgdorferi,* or *B. burgdorferi*, commonly referred to as Lyme Borreliosis, is the bacteria that causes
Lyme Disease.
[14] *Dr. Burrascano, Jr.*'s *article* entitled Diagnostic Hints and Treatment Guidelines for Lyme and Other Tick Borne
Illnesses *represents over twenty four years of research effort.*  (AR 1617).  A complete copy of the article is found in
AR 1615-1651.  Dr. Burrascano Jr. also explains "Western blots are reported by showing which bands are reactive.
41KD bands appear the earliest ….  The 18KD, 23-25KD (Osp C), 31KD (Osp A), 34KD (Osp B), 37KD, 39KD,
83KD and the 93KD bands are the species-specific ones, but appear later or may not appear at all."  (AR 1621).

disease.   (AR 1673, 1022).   Simple treatment through antibiotics is insufficient, as demonstrated by the constant reemergence of the B. burfdorferi bacteria in her blood analyses.   (AR 1580-1581, 1610-1614, 1652-1678, 1680-1682).   According to her treating physicians, Ms. Bistany's reported symptoms are directly in line with those manifested by persons with chronic Lyme disease and that those symptoms prevent her from being able to work.  (AR 1581, 1688).

> **F.    Reliance denied Ms. Bistany's appeal of the termination of her disability benefits.**

On May 29, 2012, due to her continuing disability, Ms. Bistany appealed Reliance's decision to terminate her disability benefits.  (AR 1503-1689).  Thereafter, Reliance submitted the claims file to two physicians for evaluation of her disability, including Thomas Lafferty, M.D. and Michael Silverman, M.D.  (AR 1736).  Neither Dr. Lafferty nor Dr. Silverman examined Ms. Bistany and instead only reviewed the file. (AR 1742).

Dr. Lafferty admits the following:  (i) his comments are restricted to "areas specific to Rheumatology;" (ii) Ms. Bistany "meets diagnostic criteria for fibromyalgia;" and (iii) Dr. Hadley's report is his "primary source of clinical information."  (AR 1744-1745).  Dr. Lafferty did not actually state Ms. Bistany is not disabled but instead concluded "reasonable restrictions" include certain listed tasks at 67-100%, other listed tasks at 34-66% and two remaining tasks at 33% or less. (AR 1745).  Dr. Silverman, without even acknowledging or mentioning the Western Blot serum test results, concluded the medical records do not show Ms. Bistany has Lyme disease.  (AR 1745).

Despite the foregoing, on August 28, 2012, Reliance denied Ms. Bistany's appeal.

## V.   ARGUMENT AND AUTHORITIES

### A.   Reliance's decision to deny benefits to Ms. Bistany was arbitrary and capricious.

In *Black & Decker Disability Plan v. Nord*, the Supreme Court compared the weight of treating physicians' opinions and the weight of consultants' opinions in an ERISA matter.  538 U.S. 822, 832 (2003).  Specifically, the Supreme Court stated

> [a]s compared to consultants retained by a plan, it may be true that treating physicians, as a rule, 'ha[ve] a greater opportunity to know and observe the patient as an individual. Nor do we question the Court of Appeals' concern that physicians repeatedly retained by benefits plans may have an 'incentive to make a finding of 'not disabled' in order to save their employers money or to preserve their own consulting arrangements.' But the assumption that the opinions of a treating physician warrant greater credit than the opinions of plan consultants may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration, or when a specialist engaged by the plan has expertise the treating physician lacks.

*Id.* (citation omitted).

The Supreme Court also explained "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Nord*, 538 U.S. at 834.  Although the Supreme Court also stated "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician," it also does not give free rein to plan administrators. *Id.*

Here, Patricia Salvato, M.D. is Ms. Bistany's primary treating physician.  (AR

17

441-442, 1022, 1100-1101, 1580-1581, 1673).  Ms. Bistany's other treating physicians include Dr. Sadeghi, Dr. Norris, Dr. Venkatesh and Dr. Gilmer.  (AR 1674-1677, 552-553, 1681, 511-526, 919-920).   Even if Reliance considered the diagnoses and conclusions of these five treating physicians, Reliance failed to give such them the weight due under the circumstances.  Examples of such circumstances are the following:  (i) the treating physicians' expertise as opposed to Reliance's consultants' expertise (or rather lack thereof); (ii) Dr. Hadley and Dr. Silverman's disregard of Ms. Bistany's Western Blot results that show she is positive for Lyme disease;[15] (iii) Dr. Hadley's failure to address Ms. Bistany's numerous CD57 low count results and its significance;[16] (iv) Dr. Hadley's misrepresentation of Ms. Bistany's Western Blot results by stating only the IgM 41 band was positive when the IgM 23 was also positive in several test results;[17] (v)  Dr. Hadley's opinions being based on incomplete records and a single isolated examination of Ms. Bistany;[18] (vi) Dr. Lafferty and Dr. Silverman's  opinions being based on incomplete and erroneous records;[19] (vii) the failure of Reliance's consultants to address the diagnoses of Ms. Bistany's treating physicians and the basis thereof; and (viii) the longstanding relationships Ms. Bistany has with her treating physicians.[20]

Ms. Bistany has a longstanding relationship with Dr. Salvato, Dr. Sadeghi, and Dr. Venkatesh.  (AR 441-442, 1673, 1676, 1681).  Dr. Sadeghi is a neurologist.  (AR 1674-1676).  Dr. Venkatesh is a psychiatrist.  (AR 824-847).  Dr. Hadley, Reliance's IME

---

[15] *See* AR 1559-1575, 1745.
[16] *See* AR 1559-1575.
[17] *See* AR 1559-1575, 1611, 1613, 1652, 1658, 1667.
[18] *See* AR 1576-1579.
[19] *See* AR 1742-1746.
[20] *See* AR 441-442, 1673, 1676, 1681.

consultant, is neither a neurologist nor a psychiatrist.  (AR 1559-1575).  Dr. Lafferty, Reliance's file review consultant, practices in rheumatology and internal medicine.  (AR 1744).   Dr. Silverman, Reliance's other file review consultant, practices in internal medicine and infectious disease.  (AR 1745).  None of Reliance's consultants specializes in the treatment of Lyme disease (borreliosis).  Ms. Bistany did however see Dr. Crist who is easily a Lyme disease specialist as he has treated over 7,000 patients with borreliosis.  (AR 1688).  Dr. Crist examined Ms. Bistany in April 2012 and determined she "has classic symptoms of tick-borne illness."  (AR 1688).

No circumstances exist that would caution against giving greater credit to treating physicians' opinions than plan consultant's opinions.  *Nord*, 538 U.S. at 832 (referring to short relationship with treating physician and plan specialist's expertise as examples of reasons not to give greater credit to treating physicians' opinions).   Numerous circumstances show more than valid reasons for the diagnoses and conclusions of Ms. Bistany's treating physicians to be given greater credit than the opinions of Reliance's consultants.  *See id.*   Considering the many questionable facets of the opinions of Reliance's consultants,[21] there is no reason to caution against giving greater credit to the opinions of Ms. Bistany's treating physicians.  *See Nord*, 538 U.S. at 832.

Furthermore, in discussing the standard of review of a denial of benefits, the Sixth Circuit notes "'[d]eferential review is not no review,' and 'deference need not be abject.'"  *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (quoting *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001); *Gallo v.*

---

[21] *See* Statement of Facts, sections C and F, *supra*, and Argument and Authorities, two preceding paragraphs, *supra*.

*Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996)).  District courts have "an obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously in making ERISA benefits determinations." *McDonald*, 347 F.3d at 172.  This review obligation inherently includes review of both the quality and quantity of the medical evidence and the opinions on both sides.  *Id.*  Courts otherwise would be reduced to merely acting as "rubber stamps for any plan administrator's decision as long as the plan was able to find a single piece of evidence – no matter how obscure or untrustworthy – to support a denial of a claim for ERISA benefits."  *Id.* at 172-73 (citing *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774-75 (7th Cir. 2003)).

To support its denial of benefits, Reliance has opted to give more credence to the opinion of its retained consultants over the opinions of Ms. Bistany's long term treating physicians.  While Reliance is not obligated to give greater weight to the opinions of Ms. Bistany's treating physicians, the quality and quantity of the medical evidence must be considered.  *McDonald*, 347 F.3d at 172-73.

Facts pertaining to the qualifications and trustworthiness of the physicians' opinions must also be considered. *See id.*  First, Dr. Hadley did not speak with Ms. Bistany's treating physicians.  (AR 1559-1579).  Second, Dr. Hadley examined Ms. Bistany on only a single isolated occasion.  (AR 1559-1579).  Third, Ms. Bistany's treating physicians have longstanding relationships with Ms. Bistany.  (AR 441-442, 1673, 1676, 1681).  Fourth, Ms. Bistany's treating physicians have had a greater opportunity to know and observe Ms. Bistany as an individual.  (AR 441-442, 1673,

1676, 1681).  *See Nord*, 538 U.S. at 832.  Fifth, Ms. Bistany's treating physicians have expertise in neurology and psychiatry, which Dr. Hadley does not have.  (AR 1559-1575).  Sixth, Dr. Hadley has an incentive to render opinions in favor of a denial of benefits.  (AR 1559-1575).[22]

As for Dr. Hadley's diagnosis of somatoform disorder, he failed to speak with Ms. Bistany's physicians regarding her medications and how they were affecting her psychological condition.  (AR 1559-1575).   Instead, Dr. Hadley's diagnosis merely noted the uses of Ms. Bistany's medication.  (AR 1559-1575).  Moreover, Dr. Hadley's diagnosis contradicts the records and findings of both Dr. Venkatesch, Ms. Bistany's psychiatrist, and Dr. Sadeghi, Ms. Bistany's neurologist.  (AR 1681, 1682, 1674-1676).  Dr. Venkatesh began treating Ms. Bistany for her psychological diagnoses in 2007 but he has never diagnosed Ms. Bistany with somatoform disorder.  (AR 1681).[23]

Furthermore, as support for his belief that Ms. Bistany has somatoform disorder, Dr. Hadley suggests that any refusal to accept his medical opinion results from a "medicalization" by the patient, in which the patient displays negativity towards a differing diagnosis if that diagnosis is not in line with the patient's perceived expectations.  (AR 1562).  Dr. Hadley's comments on medicalization in effect means any dispute contrary to Dr. Hadley's opinion by the patient must be resulting from somatoform disorder.  (AR 1559-1575).  Such a characterization constitutes not only an obvious overarching medical diagnosis, but also an attempt to dismiss any other medical

---

[22] *See also Nord*, 538 U.S. at 832.
[23] Dr. Venkatesh's medical assistant, Sarah Meade, NP has also ruled out Somatoform disorder as a condition affecting Ms. Bistany.  (AR 1682).

opinion refuting Dr. Hadley's own medical opinion, which raises obvious serious concerns about the veracity of Dr. Hadley's diagnosis.

Dr. Lafferty and Dr. Silverman's opinions should not be given more deference than Ms. Bistany's treating physicians.  Dr. Lafferty admitted the following:  that Ms. Bistany has the "diagnostic criteria for fibromyalgia" and that he relied on Dr. Hadley's report as his main source of clinical information.  (AR 1744-1745).  But, Dr. Hadley's report is erroneous as previously shown.[24]  Dr. Silverman merely concluded there is no evidence showing Ms. Bistany has Lyme disease without addressing the Western Blot serum test results, which Dr. Salvato and Dr. Burrascano have stated are indicators of Lyme disease.[25]  (AR 1745).  Not only does Dr. Silverman's failure to mention such Western Blot results show his opinions are unreliable and not due any deference, his disregard of the results casts serious doubt on his purported expertise and the veracity of his assessment.  (AR 1745).

Based upon Ms. Bistany's medical records, including the opinions of five treating physicians and extensive lab data, Ms. Bistany's chronic Lyme disease diagnosis should be confirmed, not denied and benefits should be reinstated.  (AR 1022, 1100, 1460, 1580-81, 1611-1614, 1622, 1652-1659, 1662-1663, 1667, 1672-1677).[26]

In consideration of the foregoing facts and the principle that plan administrators may not simply hand pick evidence to support a denial of benefits, Reliance's decision to deny benefits to Ms. Bistany was arbitrary and capricious.

---

[24] *See* Statement of Facts, section C, *supra* and preceding paragraphs in Argument and Authorities, section A.
[25] *See* AR 1580-1581, 1618, 1621.
[26] The cited medical records represent only a selective example of the records showing Ms. Bistany's disability.

**B.**     **Reliance's decision that Ms. Bistany is not disabled is not supported by substantial evidence.**

Reliance relied on the opinions of Dr. Hadley, Dr. Lafferty and Dr. Silverman. (AR 421-424, 1733-1741).  However, neither Dr. Lafferty nor Dr. Silverman examined Ms. Bistany and neither Dr. Hadley nor Dr. Lafferty or Dr. Silverman spoke with Ms. Bistany's treating physicians. (AR 1559-1579, 1742-57).  Instead, Dr. Hadley rendered opinions based on a single examination and Dr. Lafferty and Dr. Silverman rendered opinions based only on review of Reliance's file.  (AR 1559-1575, 1742-1746).  Dr. Hadley made misstatements in his report and disregarded numerous lab work results that support a diagnosis of Lyme disease, a finding unfavorable to Reliance, the entity that retained Dr. Hadley.  (AR 1559-1579).  Ms. Bistany's treating physicians have expertise in psychiatry and Lyme disease while none of Reliance's consultants have such.  (AR 1559-1579, 1742-1757).  Moreover, Ms. Bistany's treating physicians have longstanding relationships with Ms. Bistany and a greater opportunity to know and observe Ms. Bistany as an individual.[27]  (AR 441-442, 1673, 1676, 1681).

While the evidence on which Reliance relied may be authored by physicians, under the foregoing circumstances, their opinions do not constitute such relevant evidence as a reasonable mind might accept as adequate to support the conclusion that Ms. Bistany is not disabled.  Reliance abused its discretion in basing its decision on the reports of Dr. Hadley, Dr. Lafferty and Dr. Silverman under the foregoing circumstances. *See Cooper*, 592 F.3d at 652;  *Ellis*, 394 F.3d 273 (noting "[s]ubstantial evidence is 'more

---

[27] *See Nord*, 538 U.S. at 832; *see also* note 8, *supra*.

23

than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

## VI.    Attorney's Fees

As provided by ERISA § 1132(g)(1), Ms. Bistany respectfully requests that the Court award Ms. Bistany with reasonable attorney's fees for services rendered in the prosecution of Ms. Bistany's claim.  Due to the aforementioned arguments, Ms. Bistany is entitled to judgment as a matter of law. If the Court finds her the prevailing party in the instant action, pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, Ms. Bistany is entitled to reasonable attorney's fees.  Therefore, under  Federal Rule of Civil Procedure 54(d)(2)(B), Ms. Bistany will file her Motion for Attorney's fees based on costs of preparation and litigation no later than fourteen (14) days after entry of judgment in Ms. Bistany's favor and will further supplement the record with evidence in this regard at the time of the filing of her motion.

## VII.    CONCLUSION

Reliance has wrongfully denied Ms. Bistany long term disability benefits.  Ms. Bistany's treating physicians have opined that Ms. Bistany is disabled due to severe chronic impairments and resulting functional imitations. Their opinions are based on objective, diagnostic testing. These conditions have ultimately resulted in Ms. Bistany's disability. However, Reliance has arbitrarily rejected their opinions and the medical documentation submitted. Ms. Bistany's treating physicians agree that Ms. Bistany is disabled and cannot perform any occupation. However, Reliance has persisted in its

decision that Ms. Bistany is not disabled.  Reliance has abused its discretion in engaging in arbitrary and capricious practices in its denial of Ms. Bistany's claim.

As such, no genuine issue of material fact remains for adjudication on Ms. Bistany's claim and Ms. Bistany is entitled to judgment as a matter of law.  Ms. Bistany respectfully requests that the Court grant Ms. Bistany's Motion for Summary Judgment, enter judgment in favor of Ms. Bistany, and either (1) remand this case for further administrative proceedings consistent with its opinion, or (2) award Ms. Bistany with a judgment for the value of her accrued LTD benefits and require that Reliance continue payment of benefits in accordance with the terms of the Plan from the date judgment is entered forward.  WHEREFORE, PREMISES CONSIDERED, Ms. Bistany respectfully requests that the Court grant Ms. Bistany's Motion for Summary Judgment and grant Ms. Bistany any and all other relief to which it finds Ms. Bistany entitled, whether general or special, at law or in equity.

Respectfully Submitted,

MARC WHITEHEAD & ASSOCIATES, L.L.P.

/s/ *Marc S. Whitehead*
Marc S. Whitehead
TX Bar # 00785238
Federal ID # 15465
5300 Memorial Drive, Suite 725
Houston, Texas 77007
Telephone: (713) 228-8888
Facsimile: (713) 225-0940
marc@marcwhitehead.com

Attorney for Plaintiff,
Michele Bistany

25

## CERTIFICATE OF SERVICE

I certify that an electronic copy of this instrument has been served on counsel of record via *ECF* on this the 30th day of June 2014, as follows:

Claire W. Parsons
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
5847 San Felipe, Ste. 2300
Houston, Texas 77057
***Attorney for Defendant***
***Reliance Standard Life Insurance Company***


/s/ Marc S. Whitehead
MARC S. WHITEHEAD