IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| MICHELE BISTANY,<br>         Plaintiff,<br><br>         v.<br><br>RELIANCE STANDARD LIFE<br>INSURANCE COMPANY<br>         Defendant. | :<br>:<br>:<br>:<br>:   CIVIL ACTION<br>:<br>:   NO.  4:13-CV-02776<br>:<br>:<br>: |

RELIANCE STANDARD LIFE INSURANCE COMPANY'S RESPONSE IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP

BY:     Claire W. Parsons
         909 Fannin Street, Suite 3300
         Houston, TX 77010
         Telephone: (713) 353-2039
         Facsimile: (713) 785-7780
         Email: Claire.Parsons@wilsonelser.com

         **Attorneys for Defendant, Reliance
         Standard Life Insurance Company**

Date:  July 21, 2014

2062344v.1

## TABLE OF CONTENTS

Table of Authorities....................................................................................................ii

I.   STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ...........................1

II.  STATEMENT OF ISSUES ....................................................................................1

III. SUMMARY OF ARGUMENT ...............................................................................1

IV. RELEVANT FACTS...............................................................................................2

V.  ARGUMENT...........................................................................................................6

     A.  Standard Of Review......................................................................................6

     B.  Reliance Standard's Decision Is Supported by Substantial Evidence...........7

          1.  The Opinions of Plaintiff's Treating Physicians Were Considered, but they
              Are Not Binding ..............................................................................7

          2.  The Opinions of Plaintiff's Treating Physicians Were Considered, but they
              Fail to Prove the Claim of a Continuing Physical Disability ........................10

               a)  The Diagnosis Of Lyme Disease Is Not Supported............................10

               b)  Plaintiff is Not Disabled Due to Fibromyalgia....................................14

               c)  Plaintiff Remained Disabled Due to a Mental/Nervous Disorder for
                   Which Benefits Are Limited to 24 Months .........................................17

                    (i)  Plaintiff's Alleged Cognitive Impairment ...............................17

                    (ii) Plaintiff Has Been Diagnosed With Somatoform Disorder.....19

                    (iii)Plaintiff's Restrictions are the Result of Major Depression....20

               d)  Plaintiff Has Not Produced Proof of Disability Due to any Alleged
                   Physical Condition...............................................................................21

VI. CONCLUSION ......................................................................................................22

i

# TABLE OF AUTHORITIES

## Cases

*Black & Decker Disability Plan v. Nord,*
   538 U.S. 822 (2003) ...........................................................................................7

*Bush v. UNUM Life Ins. Co. of Am.,*
   2010 U.S. Dist. LEXIS 78054 (S.D. Tex. Aug. 3, 2010) .................................15, 16

*Corry v. Liberty Life Assurance Co. of Boston,*
   499 F.3d 389 (5th Cir. 2007) ..........................................................................2, 7

*Dennis v. Standard Ins. Co.,*
   1994 U.S. App. LEXIS 37288 (9th Cir. Dec. 29, 1994) .........................................15

*Dudley v. Sedgwick Claims Mgmt. Servs.,*
   495 Fed. App'x 470 (5th Cir. 2012) ..................................................................10

*Gooden v. Provident Life & Accident Ins. Co.,*
   250 F.3d 329 (5th Cir. 2001) .............................................................................9

*Hernandez v. SBC Communs., Inc.,*
   265 Fed. App'x 276 (5th Cir. 2008) ..................................................................15

*Karvelis v. Reliance Standard Life Ins. Co.,*
   2005 U.S. Dist. LEXIS 22948 (S.D. Tex. July 28, 2005) ................................10, 11

*Mobley v. Cont'l Cas. Co.,*
   405 F. Supp. 2d 42 (D.D.C. 2005)......................................................................8

*Peabody Coal Co. v. McCandless,*
   255 F.3d 465 (7th Cir. 2001) ............................................................................8

*Sweatman v. Commercial Union Ins. Co.,*
   39 F.3d 594 (5th Cir. 1994) ..............................................................................9

*Vega v. Nat'l Life Ins. Servs.,*
   188 F.3d 287 (5th Cir. 1999) ............................................................................9

2062344v.1

## I.  STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

Plaintiff is seeking additional long term disability benefits based on the diagnosis of several different conditions.  The diagnoses of some of these conditions have been discredited.  For other conditions, the claimed symptoms have been rejected.  But even beyond the fact that Plaintiff's claim is not supported by the evidence, legal support is also non-existent.  Plaintiff cites to only a few cases generally describing ERISA law in her motion, none of which actually apply to the facts of this case.  Plaintiff therefore has not met and cannot meet her burden, and her motion for summary judgment should be denied because the facts and law favor Reliance Standard's decision to discontinue the disability benefit.

## II.  STATEMENT OF ISSUES

Plaintiff identifies two issues.  Those issues should be resolved as follows:

A.  Whether Reliance Standard's decision to deny [additional] benefits to Ms. Bistany was arbitrary and capricious.

No.

B.  Whether Reliance Standard's decision that Ms. Bistany is not disabled is supported by substantial evidence.

Yes.

## III.  SUMMARY OF ARGUMENT

Plaintiff has been diagnosed with major depressive disorder and has an extensive history of treatment for anxiety.  Her treating psychiatrist has concluded that these conditions preclude her from functioning.  Unfortunately for Plaintiff, the policy under

1

which she received long term disability benefits explicitly limits benefits to 24 months

for a disability that is caused or contributed to by a mental or nervous disorder and

Reliance Standard has already paid to Plaintiff 24 months of benefits based on these

conditions.

Remarkably, Plaintiff's Motion for Summary Judgment fails to even acknowledge

her treatment for anxiety and depression and she instead insists that she is disabled due to

Lyme disease and fibromyalgia.  Plaintiff cannot prevail in this case because she does *not*

have Lyme disease and there is inadequate proof that she is disabled from fibromyalgia.

Plaintiff's burden is even higher in this case based on the grant of discretion to Reliance

Standard invoking the abuse of discretion standard.  Under this highly deferential

standard, Reliance Standard's decision must be upheld as long as it "falls somewhere on

a continuum of reasonableness — even if on the low end."  *Corry v. Liberty Life*

*Assurance Co. of Boston*, 499 F.3d 389 (5th Cir. 2007).  Plaintiff cannot prevail under

this standard.

## IV.   **RELEVANT FACTS**

Plaintiff has presented a rather misleading description of the facts.  Accordingly,

Defendant will address the facts briefly up front and also within the body of its

arguments.  On October 16, 2008, Plaintiff stopped working and claimed that she was

disabled due to chronic Lyme disease and mononucleosis.  (AR433-436, 437-440, 1100-

1101).  No evidence was ever submitted of disabling mononucleosis, and Plaintiff

appears to have abandoned that claim.  However, her internal medicine specialist, Patricia

Salvato, M.D., diagnosed Plaintiff with Lyme disease.  (AR1100-1101).  Additionally,

2

Athi Venkatesh, M.D., Plaintiff's treating psychiatrist, reported that she suffers from major depression and is *severely* functionally impaired as a result of that condition. (AR543-544).

Based on the information provided, Reliance Standard approved the claim. (AR322-325).  Despite the fact that Reliance Standard's approval of the claim was premised, at least in part, on her mental/nervous conditions for which benefits are limited to 24 months, Plaintiff omits any reference to this treatment in her Motion.  Plaintiff actually has a very long history of psychiatric problems and began treating with Dr. Venkatesh in June 2007.  (AR1176).  Plaintiff's symptoms worsened in February 2008 and her stress level was described as "very high."  (AR1177-1180, 511, 528-529, 514). By November 2008, Dr. Venkatesh reported that Plaintiff's anxiety was "out of control" and that Plaintiff was "[u]nable to sleep due to her extreme anxiety."  (AR515, 1157, 1161).  This is prior to Dr. Salvato's diagnosis of Lyme disease.  (AR478-481, 1232-1234, 1162, 523).  Dr. Venkatesh continued to treat Plaintiff for depression, anxiety and panic attacks, noting that Plaintiff was "severely functionally impaired based on psychological test results and physician's experience" and that treatment had only minimal effects.  (AR540, 525, 544).

In the summer of 2009, Plaintiff told Dr. Venkatesh that her Lyme disease was cured, but she later claimed a relapse.  (AR616-617, 1191-1192).  She reported daily panic attacks and claimed that medical tests that she was ordered to undergo triggered anxiety attacks.  (AR1192-1194).  Plaintiff also reported stressors at home.  (AR1196-

3

1197).  Dr. Venkatesh reported that Plaintiff was "going to a neurologist about frequent

headaches 'caused by constant stress and anxiety.'"  (AR1196-1197).

Plaintiff's anxiety and depression are also well documented within Dr. Salvato's

notes.  (AR482-492, 627-629,  644-647, 796-799, 801-804, 806-809, 1032-1034, 1200-

1203, 1213-1215, 1229-1231, 1252-1253).  Dr. Salvato saw Plaintiff on a nearly monthly

basis until May 2010 and then continued treatment every few months until at least June

2011.  Throughout this time, Dr. Salvato continued to document anxiety, persistent

headaches and fatigue.  (AR479-481, 1232-1234).

Payman Sadeghi, M.D. treated Plaintiff for neck pain and headaches and

eventually diagnosed Plaintiff with fibromyalgia in November 2010, two years after

Plaintiff stopped working.  (AR955, 1675-1676).  Reliance Standard does not dispute the

diagnosis; however, the record lacks proof of a disability from this condition.

All of Plaintiff's then-available medical records were sent to Arthur Hadley, M.D.,

a Board Certified specialist in Family Practice, Preventive Medicine and Occupational

Medicine, who performed an independent medical examination.  (AR1488-1489, 1473-

1487, 1490-1492).  Based on his review of the records and on her performance the day he

examined her, Dr. Hadley concluded that Plaintiff did not have fibromyalgia or Lyme

disease and is capable of light level work.  (AR1488-1489).  He did; however, believe

that Plaintiff's medications, panic attacks and mental condition were causing her claimed

impairment.  (AR1475-1476).  Reliance Standard discontinued benefits after paying more

than 24 months to Plaintiff.  (AR421-424).  Plaintiff appealed the decision and submitted

4

additional documents in an effort to support her claim that she suffers from disabling

Lyme disease and fibromyalgia. (AR1503-1689).

On appeal, Reliance Standard consulted two independent physicians. As they

became available, all of Plaintiff's medical records were forwarded to Thomas Lafferty,

M.D., a Board Certified specialist in Rheumatology and Internal Medicine who

considered Plaintiff's fibromyalgia claim and Michael Silverman, M.D., a Board

Certified specialist in Internal Medicine and Infectious Disease who considered

Plaintiff's Lyme disease claim. (AR1697-1701, 1719-1720).

Dr. Lafferty agreed that Plaintiff has fibromyalgia. (AR1698). Lacking, however,

from her records was any evidence of a related disability. (AR1698). Beyond the trigger

points used to make the diagnosis, he found no documented clinical evidence to support

Plaintiff's claim that she is unable to function in any capacity. (AR1700). He concluded

that she was capable of physical activity that exceeded that required by her own

occupation. (AR1700, 208-209).

Dr. Silverman found no reliable clinical evidence to support the diagnosis of Lyme

disease. (AR1699-1700). Although he observed that 3 of 15 studies performed provided

positive results, he concluded that they were false positives. (AR1699-1700). Plaintiff

does not reference the other twelve studies within her motion or the fact that Dr.

Silverman explained why they were false positives. Further, review of Plaintiff's CD57

count did not alter his opinion that she does not have the disease. (AR1720).

Prior to making its own determination, Reliance Standard also considered the fact

that the Social Security Administration had denied a disability claim submitted by

Plaintiff, another fact that she omits from her Motion.  (AR699-703, 705-709, 935-938).

The SSA noted that Plaintiff's neurologist, John Norris, M.D. was unable to confirm the

diagnosis and that he reported negative Lyme serology.  (AR941).  Further, relative to her

claim of fibromyalgia, the SSA noted normal testing results reported by Dr. Sadeghi that

refuted any claim of disabling impairment.  (AR945).

On August 28, 2012, Reliance Standard upheld its decision to deny Plaintiff's

claim for more benefits.  (AR1733-1741).  Plaintiff was not physically disabled and she

the claim related to her mental/nervous impairment was limited to 24 months which were

already paid.  (AR1733-1741).  As explained, Plaintiff is not entitled to any more benefits

under the Plan.

## V.      ARGUMENT

### A.      Standard Of Review

The standard of review applied by courts within the Fifth Circuit is set forth at

pages 2-3 of Plaintiff's brief.  The parties agree that the Policy grants discretion to

Reliance Standard, that review is limited to the administrative record, that Reliance

Standard's decision must be upheld if it is supported by substantial evidence and can only

be disturbed if there is no rational connection between the known facts and the decision

or the deemed facts and the evidence.  (Pl.'s Br., pp. 2-3) (citations omitted).

However, in her argument, at pages 19-20, Plaintiff relies on authority from the

Sixth and Seventh Circuits relative to the applicable standard of review.  It is the law of

the Fifth Circuit that obviously applies here.  There is no need to look outside of the Fifth

Circuit when it has fully explained the manner in which ERISA cases are decided.  As

6

explained by the the Fifth Circuit, a court's "review of the administrator's decision need

not be particularly complex or technical; it need only assure that the administrator's

decision fall[s] somewhere on a continuum of reasonableness – even if on the low end."

*Id.* at 398.  Based on the record in this case, Reliance Standard's decision cannot be

considered an abuse of discretion.

**B.**       **Reliance Standard's Decision is Supported by Substantial Evidence**

Plaintiff argues strenuously but in error that Reliance Standard has ignored

portions of the record or inappropriately discounted the opinions of her treating

physicians.  (Pl.'s Br., pp. 5, 18-23).  As discussed below, the argument is ironic given

Plaintiff's refusal to even reference her extensive psychiatric treatment and her own

physician's opinion that she is severely impaired because of her mental health.  Plaintiff

ignores this evidence and attributes her limitations to other alleged conditions because the

policy limits benefits to 24 months when a mental/nervous condition contributes to the

disability.  To receive more, Plaintiff must prove that she is totally disabled due solely to

a physical condition.  The record does not support this contention.

**1.**       **The Opinions of Plaintiff's Treating Physicians Were Considered, but they Are Not Binding**

Plaintiff cites to the Supreme Court's decision in *Black & Decker Disability Plan*

*v. Nord*, 538 U.S. 822 (2003), but ignores its holding.  In *Nord*, the Court stated that there

is no requirement under ERISA for administrators to "accord special deference to the

opinions of treating physicians" and ERISA does not "impose a heightened burden of

explanation on administrators when they reject a treating physician's opinion."  (Pl.'s

7

Br., p. 17).  But Plaintiff argues, repeatedly, that Reliance Standard erroneously rejected the opinions of her treating physicians.  (Pl.'s Br., p. 1, 18, 22, 23).  According to Plaintiff, and contrary to *Nord*, Reliance Standard should have accepted her physicians' opinions because of "the longstanding relationships [Plaintiff] has with her treating physicians" that allowed them to have "a greater opportunity to know and observe [Plaintiff] as an individual."  (Pl.'s Br., p. 18, 20).  This is exactly what is prohibited under *Nord*.

The longstanding relationship between Plaintiff and her physicians actually serves as a basis for *not* giving added weight to her doctors' opinions.  *See e.g., Peabody Coal Co. v. McCandless*, 255 F.3d 465, 469 (7th Cir. 2001) ("Treating physicians often succumb to the temptation to accommodate their patients (and their supervisors) at the expense of third parties such as insurers, which implies attaching a discount rather than a preference to their views."); *Mobley v. Cont'l Cas. Co.*, 405 F. Supp. 2d 42, 49 (D.D.C. 2005) (just as a plaintiff may argue that a consulting physician is biased towards the insurer, a doctor's "capacity as plaintiff's treating physician supports an inference of bias in favor of plaintiff and may have influenced her conclusion that plaintiff is totally disabled").

Further arguing that her treating physician's opinions should have been accepted, Plaintiff states that neither Dr. Silverman nor Dr. Lafferty examined Plaintiff before offering their opinions and Dr. Hadley only examined her once.  Plaintiff has cited to no authority that imposed a duty on Reliance Standard to have her examined once, let alone multiple times.  To the contrary, this Circuit has held that a plan is under no duty to

8

conduct a reasonable investigation since the burden of proof rests with the Plaintiff. *See*

*Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 333, 335 (5th Cir. 2001);

*Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287 (5th Cir. 1999).

In *Sweatman v. Commercial Union Ins. Co.,* 39 F.3d 594, 602-03 (5th Cir. 1994),

the Fifth Circuit rejected the identical argument that Plaintiff is making here:

> Sweatman essentially argues that MetLife made the wrong
> decision because it attached insufficient weight to her doctors'
> opinions and too much weight to the results of its own
> investigation, which Sweatman alleges was deficient. MetLife
> considered all of the medical records Sweatman submitted in
> support of her disability claim, contracted independent medical
> consultants to evaluate those records and determine whether they
> supported her physical limitations … The record generated by
> these evaluations contains ample evidence to support MetLife's
> finding that Sweatman was not permanently disabled.

*Id.*

Plaintiff also argues that the opinions of her treating physicians should have been

accepted because the independent physicians ignored and/or misinterpreted relevant

records and lack expertise in the fields of neurology and psychiatry.  (Pl.'s Br., p. 18, 22).

Dr. Hadley is board certified in family practice, preventive medicine and occupational

medicine.  Dr. Silverman is board certified in internal medicine and infectious disease.

Dr. Lafferty is board certified in rheumatology and internal medicine.  Each doctor is

qualified to offer the opinions provided, conducted a thorough review and their analyses

are well-reasoned.  In fact, many times the opinions of these doctors are consistent with

the opinions of Plaintiff's own physicians.  To the extent that there is disagreement, it

does not follow that the treating physician opinions were ignored, as Plaintiff argues.

9

"Choosing not to defer to the treating doctor is not the equivalent of ignoring his opinion." *See Dudley v. Sedgwick Claims Mgmt. Servs.*, 495 Fed. App'x 470, 477 (5th Cir. 2012). Finally, the evidence that Plaintiff claims was ignored by these doctors is actually addressed within their reports, and it disproves the diagnosis of Lyme disease.

> **2.    The Opinions of Plaintiff's Treating Physicians Were Considered, but they Fail to Prove the Claim of a Continuing Physical Disability**
>
> a)    <u>The Diagnosis of Lyme Disease Is Not Supported</u>

As noted within Reliance Standard's opening brief, the question of whether Plaintiff has Lyme disease comes down to a battle of the experts. Dr. Salvato, Plaintiff's Internal Medicine Specialist diagnosed Plaintiff with Lyme disease. (AR479-481, 1232-1234). Dr. Hadley is only one of several physicians who found no evidence of the disease. (AR1474). Dr. Silverman, an independent physician also rejected the diagnosis. (AR1699-1700). And, Plaintiff's treating neurologist, Dr. Norris found no evidence of the disease. (AR941).

Ignoring most of the other relevant evidence, Plaintiff argues that Reliance Standard should have accepted the opinion of Dr. Salvato over that of Dr. Hadley. As explained in Reliance Standard's opening brief, Dr. Salvato provided the expert opinion in *Karvelis v. Reliance Standard Life Ins. Co.*, No 03-3848, 2005 U.S. Dist. LEXIS 22948, (S.D. Tex. July 28, 2005). The record in that case contained competing physician opinions as to whether the claimant's chronic fatigue syndrome was caused or contributed to by a mental or nervous disorder. Upholding the decision to limit benefits to 24 months under the same provision at issue here, the court rejected Dr. Salvato's

10

opinion that the disability was not caused or contributed to by a mental or nervous
disorder.

The court in *Karvelis* found that "[a]lthough Dr. Salvato is board-certified in
internal medicine and has significant clinical experience in [chronic fatigue syndrome],
she nevertheless ruled out the possibility that [the claimant's] disability symptoms were
brought about by or contributed to by a psychiatric condition with no apparent basis to
support excluding a condition, such as a psychiatric examination." *Id.* at *76-77. Dr.
Salvato did the same here by failing to consider that Plaintiff's impairment is caused,
even in part by the well documented mental/nervous condition that is even referenced
within her own records.  (AR482-492, 627-629,  644-647, 796-799, 801-804, 806-809,
1032-1034, 1200-1203, 1213-1215, 1229-1231, 1252-1253).

According to Plaintiff, Dr. Salvato's opinion should be credited over Dr. Hadley's
opinion because Dr. Hadley allegedly focused only on antibody production and
disregarded "lab result-based" evidence of the disease, namely her Western Blot serum
test and a CD57 count test.  (Pl.'s Br., p. 6).  Dr. Hadley did, however, review her CD57
count test.  (AR1576).  The evidence also shows that Dr. Hadley considered Plaintiff's
Western Blot serum test.  (AR1560).  Plaintiff claims, in error, that his analysis is
inaccurate because he determined:

> The serologic diagnosis is made by either an IgM or an IgG
> blot.  The IgG blot is positive if five of ten of the following
> Borrelia-specific bands are positive: 18, 23, 28, 30, 39, 41,
> 45, 58, 66, and 93.  In Ms. Bistany's case only the IgG 41 was
> positive (1/10).  If the IgM test is to be regarded as positive,
> two of the following IgM bands must be positive: 23, 39, and
> 41.  Again, in [Ms.] Bistany's case, only the IgM 23 was

11

> positive (1/3).  Thus, as Ms. Bistany does not meet clinical or
> serological criteria, she does not have Chronic Lyme disease.

(AR1560).

Plaintiff relies on just three studies to argue that she did have the required number

of positive bands.  (Pl.'s Br., p. 7).  She then argues that Reliance Standard hand-picked

evidence to support its denial.  (Pl.'s Br., p. 22).  The record shows that it is Plaintiff who

selectively references evidence to support her claim, as she completely ignored *twelve*

*other studies* that show she does not have a sufficient number of bands (5/10 for IgG or

2/3 for IgM) required under a Western blot serum test and that the three positive studies

on which she relies were false positives.

A study performed on February 12, 2009 revealed 0 positive results on IgG testing

and only 1 positive (band 23) on IgM testing (AR655, 660-661).  The same findings were

reported based studies conducted April 23, 2009 (AR653); May 25, 2010 (AR907);

August 16, 2010 (AR904-905); January 10, 2011 (AR1050-1051).  A study performed on

June 9, 2009 revealed only 1 positive (band 41) on IgG testing and 0 positive bands on

IgM testing.  (AR650).  Studies performed on December 14, 2009, March 22, 2010,

March 8, 2011 and June 2, 2011 revealed 1 positive band (band 41 and/or 23) on each

test, still insufficient for an overall positive test result.  (AR789, 913-914, 1047, 1039).

And studies performed on July 23, 2009 and September 15, 2009 produced absolutely no

positive results.  (AR819, 815-816).  Clearly, several studies support Dr. Hadley's report

that Ms. Bistany was only positive for band 23 or 41.  The three minority studies on

which Plaintiff relies were, however, considered.

After reviewing Plaintiff's medical records, Dr. Silverman found no clinical

evidence of the disease.  In a July 13, 2012 report referencing at length Plaintiff's

Western blot serum results, he wrote:

> With respect to laboratory testing, the claimant underwent
> multiple repeated Lyme serological testing which was
> negative by IGeneX criteria for both Western blot and IGG
> Western blot and also by IFA from 1/25/12.  The claimant
> had 15 Western blot tests performed for both IGG and IGM
> from 12/18/08 through 6/2/11.  The claimant had three IGM
> Western blots reportedly positive on 12/18/08, 10/11/10, and
> 7/26/11; nevertheless, there was no evidence of any history of
> exposure or risk factors for Lyme disease.  Throughout all the
> testing performed, the claimant's Western blot IGG was
> negative which is not at all consistent with diagnosis of Lyme
> disease.  The claimant had 12 IGM Western blots, along with
> IGG Western blots, which were negative and these were from
> 2/12/09, 4/23/09, 6/9/09, 7/23/09, 9/15/09, 12/14/09, 3/22/10,
> 5/25/10, 8/16/10, 1/10/11, 3/8/11, and 6/2/11; all of these tests
> were negative; therefore, there is significant false positives
> with respect to Lyme testing when IGM is positive and IGG
> Western blot testing is negative.

(AR1744).  Incredibly, despite this narrative, Plaintiff argues that Dr. Silverman *never*

addressed or even mentioned her Western blot serum results. (Pl.s' Br., p. 22).  In any

event, the studies on which Plaintiff relies show that her IgM was positive and her IgG

was negative, and as Dr. Silverman explained, these results are indicative of a *false*

positive.

In a supplemental report, Dr. Silverman considered additional records, and he

wrote Plaintiff's "CD57 panel . . . [r]esults indicate a low CD57% and also an absolute

CD57 result of 29." (AR1719).  He explained that the "results of current testing do not

alter my opinion from my original report which is dated 7/13/12.  This lab data does not

13

alter my opinion as any additional information regarding Lyme testing does not provide support for any evidence of acute or chronic Lyme disease infection . . ." (AR1720).

Although she at times criticizes Dr. Hadley because he is a family physician, Plaintiff relies on Dr. Crist to refute the opinion of Dr. Silverman that she does not have Lyme disease. (Pl.'s Br., pp. 10, 14, 19). Dr. Hadley is actually a physician board certified in family practice, preventive medicine and occupational medicine. (AR1559). Dr. Silverman is a board certified internal medicine and infectious disease specialist. In his own words, Dr. Crist is "[e]ssentially . . . a Family Practice medical doctor whose primary focus is on patients with borreliosis." (AR1689).

Without commenting on the validity of Plaintiff's diagnosis at all, Dr. Crist states only that Plaintiff exhibits symptoms consistent with tick-borne illness and addresses only the effects of treatment. He does so in general terms based on his account that "many of [his] patients have good days and bad days." (AR1688). He comments that Plaintiff *may* need to change antibiotics through the course of treatment and that they *can* affect her symptoms. (AR1688) (emphasis added). He further comments that she *may* go into periods of remission during which she will not require antibiotic therapy at all. (AR1688) (emphasis added). In short, Dr. Crist does not comment at all on the methodology used to make the diagnosis, Plaintiff's actual restrictions and limitations and/or the possibility that her well documented depression and anxiety may have been contributing to her alleged inability to work. Indeed, his letter does not say that she cannot work. Dr. Crist's letter is far from determinative.

     b)  <u>Plaintiff is Not Disabled Due to Fibromyalgia</u>

14

Plaintiff also claims that Reliance Standard's decision was arbitrary and capricious because Dr. Hadley found no evidence to support her claim of fibromyalgia. (Pl.'s Br., pp. 9-10). Plaintiff's position is flawed in two respects. First, in its final decision, Reliance Standard relied, in large part, on the opinion of Thomas Lafferty, a physician who is board certified in rheumatology and internal medicine. (AR1699-1700, 1733-1741). And, although Plaintiff repeatedly states that Dr. Lafferty relied on Dr. Hadley's report as his main source of clinical information, Plaintiff fails to explain that Dr. Lafferty actually wrote "[u]nfortunately, Dr. Salvato's notes are not very detailed" but that unlike Dr. Hadley, he agreed that Plaintiff had a valid fibromyalgia diagnosis. (AR1698-1700). Second, even a valid fibromyalgia diagnosis is not proof of total disability. *See Hernandez v. SBC Communs., Inc.*, 265 Fed. App'x, 276, 279, n.3 (5th Cir. 2008) (citing *Dennis v. Standard Ins. Co.*, No. 93-35391, 1994 U.S. App. LEXIS 37288 (9th Cir. Dec. 29, 1994). The real question is whether Plaintiff is disabled as a result of the condition.

In *Hernandez*, the court wrote "[e]ven if [the plaintiff] was suffering from illness of some sort, [the defendant] did not abuse its discretion in denying her appeal, because there were no documented findings that her illnesses were sufficiently severe to prevent her from doing her job." *Id.* at 279. Likewise, in *Bush v. UNUM Life Ins. Co. of Am.*, No. 09-1589, 2010 U.S. Dist. LEXIS 78054, *39 (S.D. Tex. Aug. 3, 2010), the court refused to disturb the defendant-insurer's decision to discontinue benefits for a fibromyalgia claim when the claimant failed to provide "objectively, verifiable medical evidence in support of her disability and lack of capacity to" work. Like here, the

15

defendant-insurer in *Bush* accepted the fibromyalgia diagnosis and considered the

claimant's subjective complaints but it was "also evident that [the defendant] and its

medical experts focused on the absence of objectively, verifiable medical evidence in

support of [the] disability" which was not an abuse of discretion, especially where the

company also "possessed medical evidence indicating that [the plaintiff] was capable of

[working]." *Id.* at *41-42.

Plaintiff tries to support her fibromyalgia claim with records from Payman

Sadeghi, M.D. that support the diagnosis but not a related disability. The treatment

records reveal several tests that were ordered by Dr. Sadeghi, such as an MRI of

Plaintiff's brain, EEG study and video ENG study, all of which were normal.  (AR757-

760, 876-879).  Dr. Sadeghi's treatment was essentially limited to trigger point/nerve

block injections and physical therapy orders, none of which suggests that Plaintiff was

not capable of working as a result of fibromyalgia.  (AR1317, 931, 869-870, 865-866,

874-875).  Beyond the fact that Plaintiff has not met her burden, the record contains a

substantial amount of evidence that refutes the fibromyalgia based claim.

In his report, Dr. Lafferty wrote "I did not see any significant findings on exam

upon review of Dr. Salvato's notes except for the aforementioned tender points.  She

opines she is essentially unable to function in any capacity; however, there is no

documented clinical information to support this level of impairment."  (AR1699-1700).

To the contrary, Dr. Lafferty determined that Plaintiff was capable of many activities,

including continuous sitting, frequent walking and standing.  (AR1700).  The limitations

16

were consistent with and even allowed her to perform above the level that was required by her occupation. (AR208-209).

The record also contains the findings of the Social Security Administration which also considered, but rejected, Dr. Sadeghi's opinion that Plaintiff was disabled due to fibromyalgia. When denying Plaintiff's claim for Social Security disability benefits, the Administration found that Dr. Sadeghi's records showed that Plaintiff exhibited normal strength, grossly intact sensation, normal coordination and gait and normal deep tendon reflexes. (AR942). Based on the record evidence, Plaintiff was not and is not disabled due to fibromyalgia. Any impairment is a result of a mental or nervous disorder, a fact that Plaintiff continuously ignores.

      c)    <u>Plaintiff Remained Disabled Due to a Mental/Nervous Disorder for Which Benefits Are Limited to 24 Months</u>

The Policy limits benefits to 24 months when a mental or nervous disorder, including depression, anxiety or somatoform disorder, causes or contributes to the disability. (AR20). Although Plaintiff attempts to overcome this language, the facts prove otherwise. Therefore, Plaintiff has received the maximum benefit payable for her claim.

      (i)    Plaintiff's Alleged Cognitive Impairment

According to Plaintiff, a report issued by Dr. Balasubramanian confirms cognitive deficits that entitle her to additional benefits. (Pl.'s Br., pp. 11-13). Contrary to Plaintiff's position, the report actually supports the 24-month benefit limitation. In his report, Dr. Balasubramanian noted that Plaintiff "presented with complaints and

17

symptoms leading to an initial diagnosis by [her] treating physicians of . . . [u]nspecified persistent mental disorders due to conditions classified elsewhere" and he wrote "[a]dditional diagnosis for consideration: . . . [d]epressive disorder not elsewhere classified . . . other pain disorder related to psychological factors . . ." (AR1683).  While he found evidence of cognitive deficits, Dr. Balasubramanian's assessment and recommendations point to Plaintiff's mental illness as the cause.  (AR1683).

Plaintiff further relies on an article published by a Dr. Burrascano, in which he suggests that one with Lyme disease must demonstrate among other things, "persistent major neurologic involvement."  Pl.'s Br., p. 13.  Dr. Burrascano is not one of Plaintiff's treating physicians, never examined Plaintiff and never offered an opinion as to the cause of Plaintiff's symptoms.  Therefore, the article is irrelevant to her claim.  This is especially true since Plaintiff's own neurologist found *no evidence of Lyme disease*. (AR941).

Also relative to her claim of cognitive impairment, Plaintiff blatantly misrepresents the record by stating that Dr. Venkatesh, her psychiatrist, "has noted that [Plaintiff] is 'unable to perform activities of daily living' and 'her condition is so severe that she could not fulfill her role as a mom and a wife on a daily basis.'"  (Pl.'s Br., p. 13).  Indeed, Dr. Venkatesh made these statements; however, she did so relative to Plaintiff's *major depressive disorder*, not any cognitive disorder, when she wrote:

> Michelle has been under my care for the last five years.  She
> has been diagnosed with Major depressive disorder, recurrent,
> severe.  The patient has tried several medicines for the last
> five years.  The patient condition was so severe that she even
> talked about wanting to kill herself in the past.  At

18

> nonpoint[sic] in time, I diagnosed her with Somatoform
> Disorder.  She also has been diagnosed with Lyme disease
> which makes her depression even worse.  Because her
> condition is so severe that she could not fulfill her role as a
> mom and a wide on a daily basis.  She fees very guilty about
> it every day.  She's unable to perform activities of daily
> living.

(AR1681).  Although she tries her best to ignore it, Plaintiff's limitations are the result of

her mental/nervous disorders and benefits are limited to 24 months.

(ii)    Plaintiff Has Been Diagnosed With Somatoform
Disorder

Plaintiff faults Dr. Hadley for concluding that she had somatoform disorder, a

"type of psychiatric condition that causes physical symptoms to include pain, without

physical explanation."  (AR1476).  Plaintiff argues that the opinion of Dr. Hadley in this

regard must be rejected because he is not a psychiatrist, his opinion is contrary to that of

Dr. Venkatesh and his opinion is premised on a belief that Plaintiff's medications have

contributed to the disorder when Dr. Salvato has confirmed that she has "'no

contraindications' in regards to her medications."  (Pl.'s Br., pp. 10-11, 21).

First, although Dr. Hadley is not a psychiatrist, he does not stand alone in his

diagnosis of somatoform disorder.  Contrary to Plaintiff's assertion, Dr. Venkatesh also

diagnosed the condition as evidenced by her note stating "at [one ]point in time, I

diagnosed her with Somatoform Disorder."  (Pl.'s Br., p. 21, AR1681).  A *nurse*

*practitioner*, not Dr. Venkatesh ruled out the diagnosis because of Plaintiff's Lyme

disease diagnosis and evidence of anxiety and depression.  (AR1682).  However, because

Plaintiff does not have Lyme disease, this was in error.

19

Second, Dr. Hadley's opinion that Plaintiff's medication contributed to the disorder is further supported by the record. The cognitive assessment performed by Dr. Balasubramanian discussed above and on which Plaintiff relies in an effort to support her claim of cognitive impairment provides: "Med review/adjustment, if possible, may improve cognitive functions." (AR1683). Once again, Reliance Standard's conclusion is supported by Plaintiff's own evidence.

(iii)    Plaintiff's Restrictions are the Result of Major Depression

Nowhere within her brief does Plaintiff mention the fact that she has been treated for depression for many years. The omission cannot be a mere oversight, as the relevant treatment records are extensive. Dr. Venkatesh provided treatment records from June 18, 2007 through August 25, 2010. Dr. Venkatesh wrote a letter in April 2012 in which she reported that Plaintiff "has been diagnosed with Major depressive disorder, recurrent, severe [and] has tried several medicines for the last five years. [Plaintiff's] condition was so severe that she even talked about wanting to kill herself in the past." (AR1681). Her statement is supported by the treatment records, which show that in 2007, Dr. Venkatesh described Plaintiff's symptoms as "chronic," noting that Plaintiff had severe anxiety and suffered with daily panic attacks which occur suddenly and for no apparent reason. (AR1176). Plaintiff's anxiety was, according to Dr. Venkatesh "out of control" and she was "[u]nable to sleep due to her extreme anxiety" *even before she was diagnosed with Lyme disease*. (AR1161-1162, 523). This statement directly contradicts Plaintiff's

20

argument that her chronic fatigue is attributed to Lyme disease and/or fibromyalgia. (Pl.'s Br., p. 12).

In addition to the treatment records from Dr. Venkatesh, Dr. Salvato's records extensively document Plaintiff's anxiety disorder. (AR482-492, 627-629, 644-647, 796-799, 801-804, 806-809, 1032-1034, 1200-1203, 1213-1215, 1229-1231, 1252-1253). Dr. Norris also referenced Plaintiff's history of anxiety disorder. (AR552-553). And Dr. Gilmer, on whom Plaintiff relies only to support the mere diagnosis of fibromyalgia, also concluded that Plaintiff suffered, among other things, non-epileptic spells of unclear etiology probably related to stress. (AR919-920). Her symptoms are clearly caused by her anxiety and depression or, at the very least, they are contributing factors that trigger the 24 month policy limitation.

> d)   <u>Plaintiff Has Not Produced Proof of Disability Due to any Alleged Physical Condition</u>

Plaintiff claims that she is disabled as a result of "numerous other medical impairments." (Pl.'s Br., p. 4). She allegedly "suffers from numerous other illnesses and symptoms such as fibromyalgia, persistent fatigue, chronic headaches, chronic back pain, chronic nausea, diarrhea, sleep disorders, cognitive difficulties such as concentration and memory disturbance, abdominal pain, sore throat, anxiety and viral encephalopathy." (Pl.'s Br., p. 5). Reliance Standard agrees that she suffers the effects of anxiety and has already addressed her fatigue, fibromyalgia and cognitive deficit claims. Beyond the suggestion by mere proclamation, Plaintiff has not provided any evidence or even

arguments that she is disabled as a result of any other conditions and cannot be deemed to have satisfied her burden by simply listing these alleged conditions.

## VI.   <u>CONCLUSION</u>

For each of the reasons stated herein, Reliance Standard respectfully submits that Plaintiff is disabled but that her mental/nervous disorders caused or at the very least contributed to her disability.  Because benefits for disabilities caused or contributed to by a mental/nervous disorder are limited to a period of 24 months that have already been paid, Plaintiff is not entitled to additional benefits.  Accordingly, Plaintiff's motion for summary judgment should be denied.

Respectfully submitted,

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP

BY:   <u>/s/Claire W. Parsons (by permission, MLC)</u>
Claire W. Parsons
909 Fannin Street, Suite 3300
Houston, TX 77010
(713) 353-2039 / (713) 785-7780(f)
Email: Claire.Parsons@wilsonelser.com
***Attorneys for Defendant, Reliance Standard Life Insurance Company***

22

2062344v.1

<u>Certificate of Service</u>

I hereby certify that a true and correct copy of the foregoing Response in Opposition to Plaintiff's Motion for Summary Judgment was served on the following counsel of record via the court's ECF system in accordance with the Federal Rules of Civil Procedure on this the 21st day of July, 2014.

Marc Stanley Whitehead, Esquire
Whitehead & Associates, LTD, LLP
5300 Memorial Drive, Suite 725
Houston, TX 77007

***Attorneys for Plaintiff, Michele Bistany***

BY:   */s/Claire W. Parsons*
Claire W. Parsons
(by permission, Marjorie L. Cohen)