IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHELE BISTANY, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-2776 |
| | § | |
| RELIANCE STANDARD LIFE | § | |
| INSURANCE COMPANY, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This ERISA case alleging wrongful termination of benefits is before the Court

on cross-motions for summary judgment.  Defendant Reliance Standard Life

Insurance Company ("Reliance") filed a Motion for Summary Judgment [Doc. # 14],

to which Plaintiff Michele Bistany ("Bistany") filed a Response [Doc. # 18], and

Defendant filed a Reply [Doc. # 19].  Plaintiff also filed a Motion for Summary

Judgment and Memorandum of Law In Support of Motion for Summary Judgment

[Docs. # 15 and # 16], to which Defendant filed a Response [Doc. # 17]. Plaintiff

neither filed a reply nor requested additional time to do so.  These motions are thus

ripe for consideration. Having considered the parties' briefing, the applicable legal

authorities, and all matters of record, the Court **denies** Plaintiff's Motion for Summary

Judgment and **grants** Defendant's Motion for Summary Judgment.

## I.    **BACKGROUND**

Bistany was insured under a long-term disability policy with Reliance that provided for benefits in the event of total disability, defining total disability for the first thirty-six months of receiving benefits as someone who "cannot perform the material duties of his/her regular occupation" and after thirty-six months as someone who "cannot perform the material duties of any occupation . . . that the Insured's education, training, or experience will reasonably allow."  Administrative Record ("A.R.") [collectively, Exhs. # 1 through # 72 to Doc. # 14], at 8.[1]  But the policy limited the insured to twenty-four months of benefits if the total disability was "caused by or contributed to by mental or nervous disorders," and defined mental and nervous disorders to include conditions such as depressive disorders, anxiety disorders, and somatoform disorders.[2]  A.R., at 20.

On October 16, 2008, Bistany stopped working for longtime employer, Resource Staffing, Inc., and, on January 9, 2008, she submitted a long-term disability

---

[1]    Cites to the Administrative Record ("A.R.") refer to the page number in the Administrative Record.  Reliance attached the entire Administrative Record as exhibits one through seventy-two to Defendant's Motion for Summary Judgment [Doc. #14].

[2]    Somatoform disorders occur when someone truly believes they are sick but no organic or physiological explanation is found and there is a strong likelihood that psychological factors are involved.  *See* A.R., at 1480-81.

claim to Reliance.  A.R., at 1102.  She claimed she was unable to work due to "Chronic Lyme Disease/Mono" and that her symptoms at various times included "loss of energy, memory, [and] ache in joints" as well as "headaches, nausea, vomiting, [and] dizziness."  *Id.*  To support her claim, Bistany provided a form from her physician, Dr. Patricia D. Salvato, an internal medicine specialist, that stated she was unable to perform her work activities due to her severe symptoms.  A.R., at 1100-01.  Dr. Salvato listed Bistany's primary diagnosis as "Lyme disease" and "Chronic Fatigue Syndrome [and] Fibromyalgia" as secondary conditions that contributed to her disability.  *Id.*  Reliance approved Bistany's claim and paid Bistany benefits for thirty-four months, from January 14, 2009 to November 14, 2011.  A.R., at 423.

In a letter dated November 20, 2011, Reliance terminated Bistany's benefits, largely based on an Independent Medical Examination performed on October 21, 2011 by Dr. Arthur Hadley.  A.R., at 421-24.  Dr. Hadley conducted a number of tests and determined that Bistany did not have Lyme disease or fibromyalgia, and, instead, that her impairments were solely due to psychiatric factors, including somatoform disorder.  A.R., at 1474-82.  Accordingly, Reliance concluded that, per the terms of her policy,  Bistany could only receive a maximum of twenty-four months of benefits because her disability was caused or contributed to by a mental or nervous disorder.

A.R., at 422–23.

Bistany appealed Reliance's decision to terminate her benefits in a letter dated May 29, 2012, arguing that the evidence from her treating physicians and laboratory results proved she was totally disabled due to Lyme disease, fibromyalgia, and other physical conditions. A.R., at 1503-19. According to Dr. Salvato, Bistany's physician for years and the doctor who diagnosed her with Lyme disease, Bistany was unable to perform any work, and both her low CD57 counts and the results of her Western Blot tests proved she was positive for Lyme disease. A.R., at 1580–81. Bistany included with her appeal an article from Dr. Joseph J. Burrascano, Jr., who apparently did not meet with Bistany or discuss her case with anyone. A.R., at 1615. The Burrascano article explained the significance of low CD57 counts when diagnosing Lyme disease. *Id.*

Dr. Charles L. Crist, a family practice doctor who specializes in borreliosis, which appears to be another form of or a condition closely related to Lyme disease, stated Bistany "is a patient of mine diagnosed with borreliosis." A.R., at 1688-89. Dr. Crist met with Bistany to discuss her symptoms and determined she had "classic symptoms of tick-borne illness," but he did not elaborate further on any tests with objective measures used to reach his conclusions. A.R., at 1688. Dr. Payman

Sadeghi, a neurologist, treated Bistany for neck pain and migraines and diagnosed her with fibromyalgia–using the same test Dr. Hadley conducted to reach the opposite diagnosis.  A.R., at 1474-75, 1675-67.  Another neurologist, Dr. William Gilmer, also suggested Bistany had fibromyalgia and chronic fatigue syndrome.  A.R., at 919.

Bistany's treating physicians further documented numerous incidents of anxiety, depression, and panic attacks.  *See, e.g.,* A.R., at 482, 552, 919 (containing notes from Drs. Salvato, Norris, and Gilmore). Dr. Athi Venkatesh, a psychiatrist who treated Bistany for five years, explained that Bistany suffers from severe anxiety and panic attacks and has been diagnosed with major depressive disorder.  A.R., at 1681. In December 2011, Dr. Anand Balasubramanian conducted a cognitive assessment, noting Bistany's diagnoses for multiple unspecified mental disorders and determining that Bistany scored "very low" on the neurocognitive index.  A.R., at 1683.

Bistany applied for social security benefits in May 2009.  A.R., at 938.  Her claim was denied initially in September 2009 and upon reconsideration in October 2009.  *Id.*  She filed a written request for a hearing, which was held in March 2010, and the Social Security Administration issued a decision in September 2010 upholding the denial of benefits.  A.R., at 938-48.  According to the Social Security Administration, Bistany may have chronic fatigue syndrome, but she reported in a

July 2009 examination that recent blood tests showed she had been "clear of the Lyme disease for the past six weeks." A.R., at 941. The decision noted that her neurologist, Dr. Gavin Norris, treated Bistany for migraines but specifically did not diagnose her with Lyme disease. *Id.* The Social Security Administration concluded that Bistany was not disabled as she did not have a qualifying physical impairment and retained limited work functions. A.R., at 938-48.

Reliance hired Dr. Thomas Lafferty, a rheumatologist, and Dr. Michael Silverman, board certified in internal medicine and infectious disease, to review the documents from Bistany's treating physicians, Dr. Hadley's examination, and the Social Security Administration, and to provide an opinion as to whether Bistany suffered from total disability as a result of Lyme disease, fibromyalgia, or any other physical condition. A.R., at 1742-46. Dr. Silverman found "no evidence" of Lyme disease and explained that there is ongoing debate in the scientific community over the significance of low CD57 counts in diagnosing Lyme disease. A.R., at 1745. With regards to the results of Bistany's fifteen Western Blot tests, Dr. Silverman determined that the three positive test results should be treated as false positives because there was no evidence of any history of exposure or risk factors to Lyme disease and twelve prior and subsequent tests returned negative results. *Id.* Reliance's

other reviewing physician, Dr. Lafferty, agreed with Bistany's treating physicians that she had fibromyalgia, but concluded that any resulting physical limitations did not rise to the level of total disability.  A.R., at 1743-45.

After considering all these materials, Reliance denied Bistany's appeal in a letter dated August 28, 2012.  A.R., at 1733-41.  On September 20, 2013, Bistany filed this case against Reliance alleging wrongful denial of benefits under ERISA, 29 U.S.C. § 1132.  Bistany seeks declaratory relief and payments by Reliance of past due and future disability benefits, attorney's fees, and court costs.  The parties filed cross-motions for summary judgment, which have been fully briefed and are ripe for review.

## II.   APPLICABLE LEGAL STANDARDS

### A.   Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should

be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(a); *Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'"  *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the non-moving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (holding that unverified pleadings do not "constitute competent summary judgment evidence"). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence, and

must disregard all evidence favorable to the moving party that the jury is not required to believe.  *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-13).  The Court is not required to accept the non-movant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *See id.* (internal citations and quotations omitted).

## B.     ERISA Standard of Review

"'Standard summary judgment rules control in ERISA cases.'"[3] *Green v. Life*

---

[3]     Citing to cases from the First and Tenth Circuits, Defendant contends that, since ERISA cases are merely vehicles for deciding the benefits issue, Plaintiff is not entitled to the usual summary judgment inference of viewing all facts in the light most favorable to the non-moving party.  Defendant Reliance Standard Life Insurance Company's Motion for Summary Judgment and Supporting Brief ("Defendant's Motion") [Doc. # 14], at 14;  Defendant's Reply Brief in Support of Its Motion for Summary Judgment ("Defendant's Reply") [Doc. #19], at 1-2.  The Fifth Circuit,
(continued...)

*Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014) (quoting *Cooper v. Hewlett-Packard*, 592 F.3d 645, 651 (5th Cir. 2009)). "When, in an ERISA case, 'the language of the plan'–like the one at issue here–'grants discretion to an administrator to interpret the plan and determine eligibility for benefits, a court will reverse an administrator's decision only for abuse of discretion.'" *McCorkle v. Metro. Life Ins. Co.*, 757 F.3d 452, 457 (5th Cir. 2014) (quoting *High v. E-Sys. Inc.*, 459 F.3d 573, 576 (5th Cir. 2006)).

Under the abuse of discretion standard, "[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." *Ellis v. Liberty Life Assurance Co. of Bos.*, 484 F.3d 262, 273 (5th Cir. 2004); *see also McCorkle*, 757 F.3d at 456-57.  "'A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)); *see also Cooper*, 592 F.3d at 652 (citing *Meditrust*, 168 F.3d at

---

[3]       (...continued)
however, reaffirmed in a recently published ERISA case that "'[w]hen parties file cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'" *Green*, 754 F.3d at 324 (quoting *Duval v. N. Assurance Co. of N. Am.*, 722 F.3d 300, 303 (5th Cir. 2013)).

215).   Substantial evidence is "merely 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McCorkle*, 757 F.3d at 457 (quoting *Ellis*, 484 F.3d at 273).   The court's review needs "'only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness–even if on the low end'" and "'need not be particularly complex or technical.'"   *Id.* (quoting *Holland*, 576 F.3d at 247) (alteration in original).

As the Fifth Circuit clarified in *McCorkle*, "no court may substitute its own judgment for that of the plan administrator."   *Id.*   Bistany cites to cases from the Sixth and Seventh Circuits that suggest this Court should conduct a more expansive investigation of the "quality and quantity of the medical evidence."   Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Plaintiff's Memorandum") [Doc. # 16], at 20; Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response") [Doc. # 18], at 15.   However, in the Fifth Circuit, "the job of weighing valid, conflicting professional medical opinions is not the job of the courts; that job has been given to the administrators of ERISA plans."   *Corry v. Liberty Life Assurance Co. of Bos.*, 499 F.3d 389, 401 (5th Cir. 2007); *see also Holland*, 576 F.3d at 250.

III.   **ANALYSIS**

Plaintiff Bistany contends that Defendant Reliance abused its discretion when it denied her benefits under her long-term disability plan.  While the Court views the evidence in the light most favorable to the non-moving party under the summary judgment standard, its review is still limited to the highly deferential abuse of discretion standard applied in ERISA cases.  *See McCorkle*, 757 F.3d at 457; *Green*, 757 F.3d at 329.  After carefully reviewing the parties' briefing, applicable authorities, and the record, the Court concludes that Reliance's decision to deny Bistany benefits was not an abuse of discretion.

A.   **Reliance on Insurer's Own Experts Over Bistany's Treating Physicians**

Bistany argues that Reliance's decision was arbitrary because Reliance relied on the reports and examination of the doctors and consultants it hired and discredited or ignored the reports and examinations of Bistany's treating physicians.  Plaintiff's Memorandum, at 4; Plaintiff's Response, at 4 and *passim*.  The Supreme Court has rejected any rule that the opinions of a treating physician are binding on an ERISA plan administrator.  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).  Rather, the Supreme Court has held that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of

explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  *Id.*; *see also Love v. Dell, Inc.*, 551 F.3d 333, 337 (5th Cir. 2008) ("ERISA does not require the opinions of treating physicians to be preferred over those of other physicians reviewing a file; ERISA merely requires that the opinions of treating physicians, as with all evidence submitted by the claimant, actually be taken in account in an administrator's determination.").  In cases where experts present conflicting diagnoses of an insured, the administrator has discretionary authority to choose one side over the other.  *Corry*, 499 F.3d at 401; *see also Karvelis v. Reliance Standard Life Ins.Co.*, No. Civ.A. H-03-3848, 2005 WL 1801943, at *21-22 (S.D. Tex. July 28, 2005) (detailing many examples of ERISA cases that presented conflicting medical expert opinions and where courts upheld an administrator's decision to deny benefits).

Here, Bistany contends that Reliance should have given greater weight to the results of her Western Blot test and the significance of her low CD57 counts.  A plan administrator cannot "arbitrarily refuse to credit a claimant's reliable evidence."  *Nord*, 538 U.S. at 823. But the record shows that Reliance based its decision on evidence that specifically refuted the claims made by Bistany's treating physicians and called into question their reliability.  Dr. Silverman addressed both the low CD57 counts and the Western Blot tests in her report and explained why both results should

be treated as unreliable indicators of Lyme disease.  A.R., at 1744-45.  Dr. Hadley

discussed the Western Blot tests in his explanation for why Bistany was misdiagnosed

with Lyme disease.  A.R., at 1474.  Furthermore, Reliance's consultants did not

completely ignore the evidence from Bistany's treating physicians; one consultant, Dr.

Lafferty, agreed with Bistany's treating physicians over Dr. Hadley, the examining

physician hired by Reliance, for some of his analysis.  A.R., at 1743.

Bistany provides numerous arguments for why her treating physicians should

be viewed as more credible than the doctors hired by Reliance.  She suggests that the

opinions of Reliance's examiners and physicians should not be given greater weight

as they are inherently biased.  When a plan administrator operates as both an insurer

and decision maker, the court considers this structural conflict as "but one factor

among many that a reviewing judge must take into account" when determining

whether an abuse of discretion has occurred.  *Truitt v. Unum Life Ins. Co. of Am.*, 729

F.3d 497, 508 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1761 (2014) (quoting *Metro.*

*Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008)).  "[S]pecific facts of the conflict will

dictate its importance."  *Holland*, 576 F.3d at 248.  In this case, it is uncontested that

Reliance operates with a structural conflict of interest as both the insurer and decision

maker.  Bistany further alleges that "Dr. Hadley has an incentive to render opinions

in favor of a denial of benefits."  Plaintiff's Response, at 16.  A conflict of interest

"should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision." *Glenn*, 554 U.S. at 117. Bistany does not elaborate on her argument or point to specific facts that suggest any conflicts impacted Dr. Hadley's examination, Reliance's consultants' report, or her appeal. While someone hired by Reliance may have an incentive to make a finding of no disability in a close case, the Supreme Court has also cautioned that treating physicians likely have counter-balancing incentives to find the existence of a disability in a close case. *See Nord*, 538 U.S. at 832. Accordingly, any conflicts of interest are treated as a lesser factor here that do not make Reliance's decision to deny benefits arbitrary.

Bistany emphasizes that some of her treating physicians met with her for five years and have more relevant medical expertise than either Dr. Hadley, the examining physician hired by Reliance, who conducted only one examination of her and does not specialize in psychiatry or Lyme disease, or Drs. Lafferty and Silverman, Reliance's consultants, who conducted only paper reviews. However, the record contains supporting evidence from both parties' medical experts. For instance, Dr. Silverman made several arguments that do not appear to require a physical examination, such as her discussion about the uncertainty in the medical community surrounding the use of low CD57 counts to diagnose Lyme disease. A.R., at 1744-45. While one of

Bistany's treating physicians, Dr. Crist, is a family practitioner who specializes in borreliosis, Drs. Lafferty and Silverman also possess directly relevant expertise in their respective fields of rheumatology and infectious diseases.[4]  Given that plan administrators, not courts, are delegated the role of weighing conflicting evidence in considering disability benefits requests, the Court concludes that it was not arbitrary or capricious for Reliance to defer to the opinion of its consultants over Bistany's treating physicians.

### B.    Proof of Total Disability

Furthermore, the existence of a difficult physical condition is insufficient to warrant an award of total disability benefits to Bistany under her disability insurance policy.  Reliance essentially concedes in its briefing that Bistany has fibromyalgia. *See* Defendant's Reply, at 8-9.  Nonetheless, the issues remain whether Bistany has a total disability and, if so, whether it is caused by her physical, as opposed to mental, disorders.

The burden is on Bistany to produce evidence of total disability.   "[A] conflicted administrator is not under a duty to reasonably investigate a claim." *Truitt*, 729 F.3d  at 511 (quoting *Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d

---

[4]      The Social Security Administration's decision points out that one of Bistany's treating neurologists, Dr. Norris, did not diagnose her with Lyme disease and that, at the time of its decision, she did not appear to have Lyme disease.  A.R., at 941.

329, 333 (5th Cir. 2001)) (internal quotation marks omitted).  Reliance did not abuse its discretion when deciding that Bistany was not totally disabled due to a physical condition, even when the Court views the evidence in the light most favorable to Bistany.

Bistany points to several laboratory results showing that she has severe physical conditions.  Plaintiff's Motion, at 11; Plaintiff's Response, at 9.  She also points to letters and notes from treating physicians concluding that she is unable to work.  *Id.* The laboratory results do not relate to Bistany's ability to perform mental or physical tasks, and thus are not sufficient to prove a total disability, which is the test for an award of benefits under Bistany's policy.  The letters and notes, primarily from for Dr. Salvato, a specialist in internal medicine, are, at best, unclear as to whether they are based on Bistany's self-reported symptoms or objective assessments of her physical capacities performed by her doctors. *See generally* A.R., at 64, 1580-81, 1681.  While Bistany argues that she "struggles with chronic fatigue resulting from her Lyme infection and fibromyalgia,"  she only cites as support Dr. Salvato's notes that list fatigue under the assessment section.  Plaintiff's Response, at 9-10. These notes do not elaborate further.  Indeed, Reliance's consultant, Dr. Lafferty determined there was insufficient detail in Dr. Salvato's notes to decide whether Bistany was disabled, and noted that the documents contained no clinical information to support Dr. Salvato's

conclusion of total impairment.  A.R., at 1699-70.  Dr. Lafferty, therefore, relied on

Dr. Hadley's examination to conclude that Bistany had limited physical capabilities

and thus was not totally disabled.  A.R., at 1744-45.[5]  Reliance's conclusion that

Bistany was not totally disabled was not arbitrary or capricious.

### C.   Effect on Disability Determination of Bistany's Mental and Nervous Conditions

Moreover, even if Bistany were deemed to have proven she had a total

disability, Reliance's decision to terminate her disability benefits would not be

arbitrary because there is substantial evidence that her mental or nervous disorders

contributed to her disability.  It is undisputed that Bistany would only be owed further

benefits under her policy if her disability were due to a physical as opposed to mental

or nervous disorder.[6]  Dr. Balasubramanian conducted a cognitive test and found

Bistany had several cognitive defects that impacted, among other areas, her memory

and attention span.   R. 1683.   However, he linked his findings to Bistany's

"[u]nspecified persistent mental disorders."  *Id.*  Dr. Venkatesh reported Bistany was

---

[5]     Likewise, the Social Security Administration determined Bistany was capable of performing limited work functions and that Dr. Salvato's opinion to the contrary went against the weight of the evidence.  A.R., at 946.

[6]     Bistany's disability insurance policy limited monthly benefits to twenty-four months if her total disability was "caused by or contributed to by mental or nervous disorders."  A.R., at 20.  The policy further defined mental or nervous disorder to specifically include "depressive disorders," "anxiety disorders," and "somatoform disorders."  *Id.*

diagnosed with recurrent and severe major depressive disorder, as well as Lyme disease, and concluded that she was "unable to perform activities of daily living," but he did not clarify what caused her inability to function.  R. 1681.  Reliance, on the other hand, highlights documents from many of Bistany's treating physicians that discuss her longstanding issues with severe anxiety, panic attacks, and depression, and notes that her fatigue and other symptoms occurred before she was diagnosed with Lyme disease or fibromyalgia.  Defendant's Response, at 20-21.[7]

Although she directly disputes Dr. Hadley's diagnosis of somatoform disorder, Bistany fails to address the other mental and nervous disorders her treating physicians reported that she suffers.  Plaintiff's Response, at 8-9, 17-18. Bistany has not directed the Court to any further documentation that refutes Reliance's claims and establishes that her symptoms were solely the result of a physical condition.  At the very least, the documents from Bistany's treating physicians and Reliance's experts create a conflict regarding the source or sources of Bistany's disability.  The record contains well more than a scintilla of evidence to support Reliance's decision.  The Court accordingly cannot conclude that Reliance abused its discretion when it terminated Bistany's benefits in November 2011 on the ground that a mental or nervous disorder

---

[7]     Bistany further contends that she never claimed her disability was due to a mental disorder.  Plaintiff's Response, at 9.  She does not explain how this point assists her cause.  The policy does not require Bistany to claim a mental disorder .

contributed to any disability she may have.

## IV.   CONCLUSION AND ORDER

Based on the evidence in the record, given the high amount of deference afforded to Reliance under the applicable standard of review, no reasonable trier of fact could find that Reliance abused its discretion in terminating Bistany's total disability benefits.  Accordingly, Reliance is entitled to judgment as a matter of law, and it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 14] is **GRANTED**.  It is further

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 15] is **DENIED**. The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this 23rd day of **September, 2014**

Nancy F. Atlas
United States District Judge